### UNITED STATES ex rel. FLAKOWICZ v. ALEXANDER.

No. 45, Docket 20547.

Circuit Court of Appeals, Second Circuit.

Nov. 6, 1947.

Writ of Certiorari Denied Feb. 2, 1948.

See 68 S.Ct. 453.

Adrian W. Maher, U. S. Atty., and Thomas J. Birmingham, Asst. U. S. Atty., both of Hartford, Conn., for appellant.

Hayden C. Covington, of Brooklyn, N. Y., for appellee.

Before L. HAND, SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

In 1944 the relator was convicted of violating the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 301 et seq., by failing to report for induction; he was sentenced to imprisonment for three years. The judgment was affirmed by this court, 2 Cir., 146 F.2d 874, on the basis of the Falbo case, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 and certiorari was denied in 325 U.S. 851, 65 S.Ct. 1086, 89 F.2d 1971. Following the decision of the Estep case, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. Flakowicz sued out the present writ charging that he was illegally imprisoned because in the criminal trial he had been denied the right to contest his draft classification. By his local board

---

he was classified I-A while he claimed a IV-D classification. From an order sustaining the writ, the respondent, warden of the Federal Correctional Institution at Danbury, Connecticut, has appealed.

The basic question is whether Flakowicz had exhausted his administrative remedies under the Selective Training and Service Act prior to his refusal to report for induction, for if he had not the rule of Falbo's case was properly applied in his criminal trial. On January 27, 1944, pursuant to the amendment of December 5, 1943, 50 U.S. C.A.Appendix, § 304a, Flakowicz had been given a pre-induction physical examination, found acceptable for general military service, and notified by the local board of his acceptance. Thereafter on February 25, the local board notified him to report for induction on March 8, 1944. He acknowledged receipt of this order but he refused and failed to obey it. What constitutes exhaustion of administrative remedies under the Selective Service System was discussed in the cases of Gibson and Dodez, reported as Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301. Dodez contended, as does Flakowicz, that the administrative process was completed when his pre-induction physical examination had been given and he was found acceptable for service, and that it was not necessary for him to report in order to exhaust his administrative remedies. So the court held. But Dodez, unlike Flakowicz, was classified as a conscientious objector, was assigned to work of national importance and was ordered to report for such work at a designated camp. Under the Regulations then in effect, when an "assignee" reported to the camp, the camp director accepted him as of course, merely making certain formal entries to complete the record. As the court said at page 349

of 329 U.S., at page 307 of 67 S.Ct.: "* * * we agree that these were only formal matters to be performed by camp officials, and left nothing to be done by them or by the applicant after reaching the camp which might result in his being rejected or released from the duty to remain and perform the further duties imposed on him." Consequently the decision in the Dodez case is not a controlling authority in the case of Flakowicz.

As to him the question must be determined by an examination of the Regulations applicable on March 8, 1944 to a registrant classified as I-A and ordered to report on that date for induction into the armed services. Following the enactment of the statute providing for a pre-induction physical examination, the Selective Service regulations governing the procedure relating to selection for service were changed in some respects, but they still left open the possibility that a registrant who had been found acceptable on a pre-induction physical examination within 90 days might nevertheless be rejected when he appeared for induction. The basic amendment, Amendment No. 200 (9 F.R. 440), effective Jan. 10, 1944 provided that every registrant, with certain exceptions not here relevant, before he is ordered to report for induction shall be given a pre-induction physical examination, section 629.1. Amendment No. 207 (9 F.R. 445) likewise effective Jan. 10, 1944 deals with the duty of a registrant "if he is not accepted by the armed forces," section 633.21(b) (6), and provides further that if registrants "are rejected," representatives of the armed forces shall supply transportation for their return trip, section 633.22(4). Moreover on January 6, 1944 the army issued orders in the form of a letter (printed in the margin)[1] which makes

---

[1] "Subject: Pre-Induction Physical Examination of Registrants.
To: Commanding General
Second Service Command
Army Service Forces
Governors Island,
New York.
1. Recent legislation requires the Armed Forces to physically examine any Selective Service registrant in advance of his induction provided he desires such examination and his induction will shortly occur. The Army, Navy and Selective Service have agreed to give pre-induction

examinations to all registrants whose induction will shortly occur with certain exceptions referred to hereinafter.
* * * * * * *
9. Reception Center Procedure.
a. The pre-induction physical examination given at the Induction Station will be void after ninety days from date of examination shown on DSS Form 221.
b. A registrant found acceptable on pre-induction examination and reporting to a reception center on order to report for induction, who has had a pre-induction physical examination within this 90

perfectly clear that a registrant may be rejected when he reports for induction if a "physical check" discloses "exceptional circumstances which indicate marked deterioration in physical condition, or error or omission by pre-induction examining personnel." See also the Army Regulation on Induction and Reception (A.R. 615-500) effective August 10, 1944, the pertinent parts of which are quoted below.[2]

The regulations and army orders above discussed demonstrate the existence of a possibility that Flakowicz might have been rejected had he obeyed the order to report on March 8th. They demonstrate also the accuracy of Mr. Justice Douglas' dictum in note 4 to his opinion in the cases of Sunal and Kulick, reported as Sunal v. Large, 67 S.Ct. 1588, 1592, where the reason for denial of certiorari to Flakowicz was explained.[3] Since Flakowicz had not exhausted his administrative remedies before he failed to report, the rule of Falbo's case was applicable in his criminal trial.

This conclusion renders unnecessary any decision whether habeas corpus would be an available remedy had error occurred in the trial. Cf. Sunal v. Large, supra, where it was held that habeas corpus would not lie, but Mr. Justice Douglas added: "Of course, if Sunal and Kulick had pursued the appellate course and failed, their cases would be quite different."

Accordingly the order on appeal must be reversed and the cause remanded with directions to dismiss the writ.

---

days time limit will be given a physical check for contagious diseases, apparent defects, and intercurrent illness or injury. Providing these are not present or are not disqualifying the registrant will be inducted. (A registrant who has secured a complete pre-induction examination and has been declared acceptable within the preceding ninety (90) days will be rejected only under exceptional circumstances which indicate marked deterioration in physical condition, or error or omission by pre-induction examining personnel.)

\* \* \* \* \* \* \* \*

d. Registrants reporting at Reception Centers for induction who have positive serology. Any registrant who is forwarded by Selective Service on order to report for induction, whose record indicates a positive serological test for syphilis will not be inducted until the results of a spinal fluid survey for evidence of central nervous system syphilis has been accomplished. Should the spinal fluid survey indicate cerebrospinal syphilis, or other examinations show evidence of cardiovascular or visceral syphilis, the registrant will be rejected and returned to the locality of the local board at Army expense.

By order of the Secretary of War:
/s/  C. W. Ardery
Adjutant General"

2 "Army Regulations
No. 615-500
War Department
Aug. 10, 1944
Reception and Processing of Men Inducted or Enlisted

\* \* \* \* \* \* \* \*

§ 15.e. Registrants forwarded for induction.—Registrants forwarded for induction will ordinarily have had a preinduction physical examination within 90 days and will require only a physical inspection. Registrants so forwarded, who have not been previously examined, or who have been previously examined and found not acceptable, or who have been examined and found acceptable more than 90 days previously, will be given a complete examination. The preinduction physical examination will be void after 90 days from the date of the examination shown on DSS Form No. 221.

(1) Physical inspection.—Registrants found acceptable for military service on preinduction physical examination and reporting to an armed forces induction station on order to report for induction within 90 days of such examination, will be given a careful physical inspection, with all clothing removed, for contagious diseases, apparent defects, and intercurrent illness or injury. Such registrants will be rejected only under exceptional circumstances which indicate marked deterioration in physical condition, or error or omission by the preinduction examining personnel.

3 " \* \* \* We also denied certiorari in Flakowicz v. United States, 325 U.S. 851, 65 S.Ct. 1086, 89 L.Ed. 1971, but it, like Falbo v. United States, supra, was one where the administrative remedies had not been exhausted, there being an additional examination which the registrant had not taken. See Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301."