**Robert Nolen BRIGGS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21363.**

United States Court of Appeals
Ninth Circuit.
June 26, 1968.

J. B. Tietz (argued), Michael Hannon, Los Angeles, Cal., for appellant.

Michael Heuer (argued), Asst. U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Criminal Div., Anthony Michael Glassman, Asst. U. S. Atty., William M. Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before KOELSCH and BROWNING, Circuit Judges, and POWELL, District Judge.

POWELL, District Judge.

This is an appeal from a conviction and sentence to three years imprisonment after the appellant was found guilty of refusing to submit to induction into the armed forces in violation of 50 U.S.C. App. § 462.

The appellant completed his classification questionnaire and filed it with his local board on February 3, 1964. He was first given a student deferment. On August 19, 1965 he was reclassified I-A. He was then ordered to report for a physical examination on September 17, 1965. Upon examination he was certified as acceptable for military service.

On October 18, 1965 the board received a letter from appellant asking permission to travel out of the country. This request was denied. On October 27, 1965 the board mailed appellant an order to report for induction on November 9. Appellant then sent a telegram to the board advising that he was in Mexico and married and requesting an extension of his induction date. He was advised by the board on November 5, 1965 that his telegram had been received but that the facts presented did not warrant reopening or reclassification.

On November 8, 1965 appellant's mother requested the special form for conscientious objectors, SSS Form 150. The board received appellant's completed form on December 2, 1965. The form asked "when and from whom" appellant acquired the beliefs upon which he founded his conscientious objection. Appellant replied:

"I have inculcated attitudes and beliefs from my parents, who are both pacifists and humanists and who have a religious reverence for the value of life. I also attended Quaker services (Friends meetings) in my teens which had a tremendous influence in my credo."

The form also asked when appellant had given public expression to his beliefs. Appellant replied:

"I have given public expressions to peace marches; moreover, within the Young Peoples Socialist League, of which I have been a member for five years, I have always supported the pacifist position."

These responses indicate that appellant's conscientious objection pre-dated the order to report for induction. Appellant made no statement to the local board which would evidence that appellant's beliefs crystallized after he was ordered to report for induction. On December 10 appellant was advised that the facts presented did not warrant reopening or reclassification. On December 13, 1965 appellant was again ordered to report for induction.

On December 21, 1965 appellant reported. He indicated to induction station personnel that he would refuse induction. He was not given a physical inspection, but was segregated with other "refusals" away from the more cooperative inductees. When requested to take the symbolic step forward signifying induction into the armed forces, appellant refused. When according to regulation the process was repeated, appellant again refused.

Appellant argues three points on appeal: First, he contends that the board erred in declining to reopen his classification on receipt of his SSS Form 150; Second, he claims that induction station personnel erred by not giving him a physical inspection; and Third, he claims that the trial court erred by excluding testimony of his counselor. We

agree with appellant's second contention and reverse.

## I

## FAILURE TO REOPEN

Appellant claims that the board should have reopened to determine when his beliefs crystallized. He relies on United States v. Gearey, 368 F.2d 144 (2nd Cir. 1966). Precisely the same claim was made in Dugdale v. United States, 389 F.2d 482, 484 (9th Cir. 1968) in which the court held:

"* * * It was incumbent upon Dugdale to submit statements and information which, if true, would be a basis for the change in classification. He was required to show a 'change of status' occurring after receipt of the induction notice."

Because appellant failed to show or even claim a change of status after the order to report for induction, he cannot rely on United States v. Gearey.[1] Furthermore, appellant's SSS Form 150, like Dugdale's, indicated that his conscientious objection was formulated prior to the order to report for induction.

## II

## PHYSICAL INSPECTION

Army Regulations 601–270, ch. 3, § III, para. 69 at 3–23 (1965) states:

"Registrants or applicants for induction or enlistment, who have undergone a medical examination of the prescribed scope within 180 days prior to the induction processing and have been

1. The regulation which governs applications such as appellant's is 32 C.F.R. § 1625.2, which states in part:
"The local board may reopen and consider anew the classification of a registrant * * * if such request is accompanied by written information presenting facts not considered when a registrant was classified which, if true, would justify a change in the regis-

trant's classification; * * * provided, * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds that there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

found medically qualified, will undergo a physical inspection."

See also, AR 601–270, ch. 1, § I, para. 10 (1965). The physical inspection required by paragraph 69 is relatively cursory, compared to the pre-induction physical examination which appellant was given on September 17, 1965.[2] AR 601–270 ch. 2, § II, para. 32 at 2–9 chronologically lists the steps in induction processing, including:

"(4) Physical inspection or complete medical examination, as appropriate.

\* \* \* \* \* \*

"(8) Induction (if found fully acceptable for induction into the Armed Forces)."

AR 601–270 ch. 2, § I, para. 24, at 2–8 (1965) enumerates classes of persons ineligible for induction, including "b. Registrants who fail to meet the prescribed medical standards."

Induction station personnel told appellant "We don't give physicals to refusals." But the regulations clearly required that appellant be given a physical inspection and that he be rejected if found unfit.

Not all procedural irregularities vitiate an order to step forward for induction. Prejudice to the registrant from failure to observe regulations must be established. United States ex rel. Lipsitz v. Perez, 372 F.2d 468, 469 (4th Cir.), cert. den., 389 U.S. 838, 88 S.Ct. 57, 19 L.Ed.2d 100 (1967); Johnson v. United States, 285 F.2d 700 (9th Cir. 1960); Yaich v. United States, 283 F.2d 613, 619–620 (9th Cir. 1960); Mason v. United States, 218 F.2d 375 (9th Cir. 1954); Knox v. United States, 200 F.2d 398, 401 (9th Cir. 1952). The cases cited involve disregard of regulations by selective service system personnel. The disregard of regulations in this case was by military personnel. But no reason appears why the same rule should not apply, although the immediate effect in this case is to vitiate the order to step forward rather than the order to report for induction. Army Regulations, like selective service regulations, constitute part of the procedural framework governing induction. See Mason v. United States, supra.

Counsel have not cited, and we have not found, any cases which determine whether denial of a physical inspection is sufficiently prejudicial to vitiate the induction process.[3]

2. The examination given appellant on September 17, 1965 is described by the regulations as follows:
"c. Scope of the medical examination.
A complete medical examination will consist of an evaluation of—
(1) Examinee's medical history, and
(2) Medical examination finding comprising a clinical evaluation, laboratory findings, and other measurements and findings as prescribed by chapter 10, AR 40–501." AR 601–270, ch. 3, § III, para. 68c at 3–18 (1965).
The physical inspection which appellant was not given when he reported for induction is described as follows:
"(2) Scope of physical inspection. The examining physician will review the previous medical examination reports (SF's 88 and 89) and any accompanying additional documents and discuss with the examinee any intervening injuries and illnesses, or any other health

problems not a matter of record. The examinee, with clothing removed, will be closely observed by the examining physician to detect the presence of any communicable diseases and apparent defects not previously recorded. \* \* \*." AR 601–270, ch. 3, § III, para. 69(2) at 3–23 (1965).

3. The cases which we have found, and which might be construed to hold such a denial unprejudicial, are distinguishable. Miller v. United States, 169 F.2d 865 (6th Cir. 1948) and United States v. Coon, 153 F.Supp. 96 (D.Utah), appeal dismissed, 249 F.2d 320 (10th Cir. 1957) are cases in which the holding of the courts was that the registrants were not entitled to physical examinations under the regulations applicable. The registrant in Johnson v. United States, 285 F.2d 700 (9th Cir. 1960) contended the local board order to report for work of national importance was invalid because he was not given a physical examination

An analogy drawn from exhaustion of administrative remedies cases indicates that the denial of a physical inspection should be held prejudicial. In Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944) the registrant appealed his conviction for failing to report for work of national importance. The Supreme Court held that he could not challenge his classification because he had not reported for work (and then refused to begin). The court indicated that if he had reported for work he might have been medically rejected. In Estep v. United States, 327 U.S. 114, 123, 66 S.Ct. 423, 90 L.Ed. 567 (1946) the court declared that *Falbo* had been merely an application of the doctrine of administrative remedies. Finally, in the case of a registrant named Dodez, reported as Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331 (1946), the court made it clear that the only determinative factor in the *Falbo* case had been the availability of a physical inspection upon request at the camp. Dodez failed to report to a work camp, yet was held to have exhausted his administrative remedies. Between *Falbo* and *Dodez* selective service regulations were changed to preclude rejection of a registrant even though he failed the work camp inspection. The rule of these cases is clear: If a registrant does not avail himself of the opportunity to fail a physical examination which might change his classification, he cannot contest the validity of an order to report on the basis that he was wrongly classified. See also, United States ex rel. Flakowicz v. Alexander, 164 F.2d 139 (2nd Cir. 1947), cert. den., 333 U.S. 828,

68 S.Ct. 453, 92 L.Ed. 1114 (1948). This same factor, the possibility of rejection and reclassification, indicates that denial of a physical inspection to appellants was prejudicial. In the exhaustion of administrative remedies cases, this possibility is deemed sufficiently important to justify refusal to consider a registrant's claims of error. It appears reasonable that this possibility be deemed equally important when the military disregards the requirements of a physical inspection.

■ We could assume that the likelihood of rejection in appellant's case was slight. The physical inspection is relatively cursory, and appellant had recently passed a more rigorous examination. But the exhaustion of administrative remedies cases are concerned with the same odds. And the physical inspection is not a time consuming, resource wasting process. In short, the exigencies of the service do not justify disregard of the regulations in this instance just because the registrant is expected to refuse induction.

### III

### REJECTION OF THE COUNSELOR'S TESTIMONY

We need not consider the rejection by the trial court of the testimony of appellant's counselor. Such proffered testimony would support his claim that his conscientious beliefs matured after the induction notice was sent. That claim need not be passed on in view of the disposition of this appeal.

Reversed.

within 120 days of the reporting date. His contention was rejected. The court did not specify whether its decision was based on lack of right to an examination or lack of prejudice from denial of the examination. But the only cases cited by the court in support of its decision on

this issue, United States v. Manns, 232 F.2d 709 (7th Cir. 1956) and Miller v. United States, supra, held that registrants were not entitled to physical examinations. Thus it seems appropriate to restrict *Johnson* to an identical holding.