Steven Michael **OSHATZ**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21806.**

United States Court of Appeals
Ninth Circuit.

Sept. 25, 1968.

As Amended Dec. 23, 1968.

J. B. Tietz (argued), Los Angeles, Cal., for appellant.

Ronald S. Morrow (argued), Asst. U. S. Atty., Wm. M. Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Criminal Division, Los Angeles, Cal., for appellee.

Before CHAMBERS and JERTBERG, Circuit Judges, and WEIGEL, District Judge.

WEIGEL, District Judge:

On February 20, 1967, appellant Steven Michael Oshatz was found guilty of having refused induction into the armed forces in violation of the Universal Military Training and Service Act § 12(a), 50 U.S.C. App. § 462(a) (1964), as *amended*, (U.S.C.A. App.Supp., 1967). He was sentenced to the custody of the Attorney General for a period of three years. This appeal followed. Our jurisdiction rests upon 28 U.S.C. §§ 1291, 1294 (1964).

Oshatz registered with Local Board No. 100 on November 4, 1958. On October 5, 1959, the local board received from him a completed Classification Questionnaire (SSS Form No. 100). In this questionnaire Oshatz did not sign the section relating to conscientious objection, nor did he request Special Form for Conscientious Objection (SSS Form No. 150). On October 2, 1961, Oshatz was classified I–A. He was ordered to report for a physical examination on June 5, 1963, and thereafter was certified acceptable for military service.

The board received Current Information Questionnaires from Oshatz on May 22, 1963, and June 14, 1965. In neither did he claim the status of conscientious objector.

The board again classified Oshatz I–A on November 2, 1965, and sent him notice thereof. No appeal was taken. An order to report for induction on December 28, 1965, was sent on November 19, 1965.

On December 1, 1965, the board received a letter from Oshatz requesting reclassification from I–A to I–O (conscientious objector), a cancellation of his induction order, and a transfer of his local board to New York City. Acting on that letter, the board sent Oshatz a notice that his induction had been postponed and enclosed SSS Form No. 150 within which to make the conscientious objector claim. Oshatz completed the form and returned it to the board. In addition, friends and acquaintances of Oshatz mailed letters to the board attesting to his sincerity.

On February 1, 1966, Oshatz had an interview before the board. At the conclusion of the interview the board decided not to reopen his classification, and notified him of the decision. On March 1, 1966, Oshatz was sent notice of a new date to report for induction, March 22, 1966. On that date he reported to the induction center and completed all steps preliminary to induction, except one. He was not provided with and therefore did not execute the Security Questionnaire, DD Form No. 98, as required by regulation.[1] Oshatz refused to take the final step of submitting to induction.

---

1. The applicable regulation was AR 601–270 (1966). (Army regulations governed the induction proceedings as there were no controlling Selective Service System regulations. See Chernekoff v. United States, 219 F.2d 721, 724 (9th Cir. 1955).) At the time of Oshatz' induction, AR 601–270 read in pertinent part: "At the preinduction examinations all registrants, except registrants in Class I–O (conscientious objectors), who are found to be militarily qualified for service in the Armed Forces, including administrative acceptees, will be given the opportunity to accomplish the Armed Forces Security Questionnaire. * * * A registrant who qualifies or refuses to accomplish the DD Form 98 in its entirety (see AR 604–10) or who discloses significant derogatory information with

Appellant argues (1) that the local board's denial of I–O classification was arbitrary and without basis in fact, (2) that the board erred in refusing to reopen the classification upon receipt of SSS Form No. 150, and (3) that the loyalty portion of the induction procedure was *improperly conducted.*

The first two arguments are interrelated and accordingly will be considered together. Oshatz advanced his claim for conscientious objector status for the first time after he received the Order to Report for Induction. Under these circumstances the controlling regulation was 32 C.F.R. § 1625.2 (1968), which provided in part:

"The local board may reopen and consider anew the classification of a registrant * * * upon the written request of the registrant * * * *if* such request is accompanied by written information presenting facts not considered when a registrant was classified which, if true, would justify a change in the registrant's classification; * * * *provided* * * * *the classification of a registrant shall not be reopened after the local board has mailed to such registrant an order to report for induction * * * unless the local board first specifically*

*finds that there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."* (Emphasis added.)

■■ Since only a "change in status" occurring *after* issuance of the induction order would require the board to reopen a registrant's classification, it was incumbent upon Oshatz to allege and demonstrate that his views had crystallized after receipt of the induction notice. *Briggs v. United States,* 397 F.2d 370 (9th Cir. 1968); *Dugdale v. United States,* 389 F.2d 482 (9th Cir. 1968). This he did not do. On the contrary, without exception, the letters presented to the board, the remarks of Oshatz to the board during his interview, his SSS Form No. 150, and the testimony of his mother at trial, all indicated that Oshatz' views were long standing.[2] The board's refusal to reopen and reclassify was proper under 32 C.F.R. § 1625.2 (1968).[3]

■ Oschatz' next contention concerns the induction proceedings. He states and the government concedes that the "loyalty" portion of the induction proceedings was not conducted in conformity with the regulations. Oshatz was never given DD Form No. 98 to execute. The government makes the proce-

respect to his background, or invokes constitutional privileges, and registrants admitting current membership in the Communist party ('known Communists') and registrants for whom credible derogatory information has been received from a reliable source indicating Communist party membership ('alleged Communists') as defined in AR 604–10, will not be inducted into the Armed Forces pending completion of a thorough investigation."

2. On these facts, it is unnecessary to decide whether conscientious objector views which do mature after notice of induction are a "change in the registrant's status resulting from circumstances over which the registrant had no control" and permit the board to reopen under 32 C.F.R. § 1625.2 (1968). In *Ehlert v. United States* (9th Cir. 1968), we gave an affirmative answer to that question. Compare *United States v. Gearey,* 368 F.

2d 144 (2d Cir. 1966), and *Keene v. United States,* 266 F.2d 378 (10th Cir. 1959), with *United States v. Taylor,* 351 F.2d 228 (6th Cir. 1965), and *Boyd v. United States,* 269 F.2d 607 (9th Cir. 1959) (dictum), and *United States v. Schoebel,* 201 F.2d 31 (7th Cir. 1953).

3. The validity of this regulation as a reasonable limitation on the right to make a conscientious objector claim has been consistently upheld. See, e. g., *Davis v. United States,* 374 F.2d 1 (5th Cir. 1967); *United States v. Gearey,* 368 F.2d 144 (2d Cir. 1966); *United States v. Al-Majied Muhammad,* 364 F.2d 223 (4th Cir. 1966); *United States v. Taylor,* 351 F.2d 228 (6th Cir. 1965); *United States v. Porter,* 314 F.2d 833 (7th Cir. 1963); *Boyd v. United States,* 269 F.2d 607 (9th Cir. 1959); *Keene v. United States,* 266 F.2d 378 (10th Cir. 1959).

dural argument that this court may not consider that issue because it has been raised for the first time on appeal without opportunity for the district court to have passed upon it. Yeater v. United States, 397 F.2d 975 (9th Cir. 1968). Contrary to the government's assertion, the district court was not only given the opportunity to rule upon the issue, the court in fact did so when it denied Oshatz' Motion for Judgment of Acquittal, which presented the issue. Moreover, the record on appeal includes Oshatz' Selective Service file which contains a typewritten statement that the "man was not given DD Form 98 to initiate." The issue, therefore, is properly before this court. See Elder ᐧv. United States, 202 F.2d 465 (9th Cir.), cert. denied, 345 U.S. 999, 73 S.Ct. 1143, 97 L.Ed. 1405 (1953). And it requires reversal of the judgment of conviction.

A myriad of regulations specify the procedural steps which must be followed by a registrant, the local board, the appeal board, and military personnel in order to accomplish the induction of a young man into the armed forces, or his exclusion therefrom. Because there are so many regulations, which are often complex, and because the individuals who are expected to comply with the regulations are not legal experts, procedural irregularities are frequent. Even the most casual glance at the case law will reveal a staggering array of deviations from the regulations which have been advanced as defenses to prosecutions for refusal to submit to induction. The defenses have been unsuccessful where the procedural irregularities are minor and the registrant has not been prejudiced because of them. See, e. g., Edwards v. United States, 395 F.2d 453 (9th Cir. 1968); United States v. Lawson, 337 F.2d 800 (3d Cir. 1964), cert. denied, 380 U.S. 919, 85 S.Ct. 913, 13 L.Ed.2d 804 (1965). Courts have responded to the necessity of "balancing between the demands of an effective system for mobilizing the Nation's manpower in times of crisis and the demands of fairness toward the individual registrant." Simmons v. United States, 348 U.S. 397, 403, 75 S.Ct. 397, 401, 99 L.Ed. 453 (1955). Accordingly, defenses based upon irregularities resulting in substantial prejudice to registrants have been sustained. See Simmons v. United States, supra; Chernekoff v. United States, 219 F.2d 721 (9th Cir. 1955).

In this case Oshatz might not stand convicted of a felony had he been given the opportunity to execute the loyalty questionnaire.[4] Under the rationale of our decision in Briggs v. United States, 397 F.2d 370 (9th Cir. 1968), that is sufficient prejudice to require reversal.

This conclusion is not changed by our holding in Welsh v. United States, 404 F.2d 1078 (9th Cir. 1968). In that case, the appellant refused to comply with the loyalty questionnaire procedures although he had been given full opportunity to do so. Therefore, all consequent prejudice claimed by him was the product of his own deliberate conduct.

Reversed.

---

4. "If a registrant answers anything other than 'no' to any question, or if he refuses to answer any question, * * * he is usually taken out of the normal processing and called into a room where he is questioned by someone from Military Intelligence, and occasionally, also by a psychiatrist. From that point forward, the procedure is similar to any other government loyalty-security check. The standards used by Military Intelligence are no more precise than those used by civil service.

"After some months, the registrant receives a notification from the Defense Department, not from the System, that he is acceptable or unacceptable on security grounds. If he is found unacceptable, he will not be drafted unless he appeals from the classification, has a successful hearing and is declared acceptable." A. Ginger, Minimum Due Process Standards in Selective Service Cases—Part 1, 19 Hastings L.J. 1313, 1339 (1968).