**UNITED STATES of America,**
**Plaintiff,**

v.

**Phillip David RODWELL, Defendant.**

**No. CR–71–981.**

United States District Court,
N. D. California.

March 1, 1972.

James L. Browning, Jr., U. S. Atty.,
Robert Carey, Asst. U. S. Atty., San
Francisco, Cal., for plaintiff.

Ezra Hendon, Berkeley, Cal., for defendant.

## ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL

ZIRPOLI, District Judge.

This is a prosecution for refusal to submit to induction in violation of 50 U.S.C. App. § 462(a). The defendant's sole argument in support of his motion for judgment of acquittal is that the failure of the local board actually to receive certain medical records from the Armed Forces Entrance and Examining Station vitiates the order to report for induction. Simply stated, the defendant's premises are, first, that receipt by the local board of a registrant's audiogram card and chest x-ray film is prerequisite to issuance of a valid DD Form 62 advising the registrant of his acceptability under 32 C.F.R. § 1628.25, and, second, that the board must issue DD Form 62 before it may order a registrant to report for induction under 32 C.F.R. § 1631.7(a). The defendant concludes that since the board did not actually receive those documents, it did not have the power to issue DD Form 62 and the order to report for induction based thereon is void. This argument raises, once again, the troublesome issue of procedural irregularity which continues to plague the operations of the Selective Service System.

On August 11, 1964, the defendant registered with his local board in Berkeley, California. He was subsequently classified II–S until September 26, 1966, when he was classified I–A. On November 16, 1966, the local board ordered the defendant to report for a pre-induction physical, which he did. The records of this pre-induction physical contain no chest x-rays or audiogram card, although the Report of Medical Examination (Form 88) indicates that both tests were performed. The local board sent the defendant a DD Form 62 Statement of Acceptability on December 15, 1966 and subsequently ordered him to report for induction. Pursuant to his request, he was reclassified as a student and granted a II–S classification until December 3, 1969 when he was again clas-

sified I–A. He was ordered to report for induction on March 24, 1970. After postponing the defendant's induction to consider a belated conscientious objector claim, the local board ordered him to report for induction on May 19, 1970. Pursuant to the provisions of AR 601–270 ¶ 3–18, the defendant received another complete medical examination, not simply a physical inspection, including a chest x-ray and an audiogram, both of which documents are in his file. On that date, the defendant refused to submit to induction. This prosecution followed.

The defendant's argument boils down to the claim that issuance of the invalid DD Form 62 on December 15, 1966, more than three years before the defendant was finally ordered to report for induction on May 19, 1970, rendered his induction "premature." In support of this contention, the defendant relies almost exclusively on this court's holding in United States v. Dubay, CR–71 493 (N.D.Cal., December 15, 1971). In the court's view, this case calls for some elaboration of this court's opinion in *Dubay* within the context of the pertinent Ninth Circuit case law.

The court begins with the observation that procedural irregularities are endemic to the operations of the Selective Service System. As the Eighth Circuit observed in United States v. Chaudron, 425 F.2d 605, 608 (8th Cir. 1970):

> "A plethora of regulations have been promulgated in the field of Selective Service law, delineating procedures whereby registrants are to be classified, processed, and inducted—or ordered to report for civilian work in lieu of induction. Members of draft boards and their clerks are not experts in Selective Service law. Thus, errors in processing a registrant for induction or alternative civilian work are not infrequent."

The Ninth Circuit has also commented on this unfortunate circumstance:

> "A myriad of regulations specify the procedural steps which must be

followed by a registrant, the local board, the appeal board, and military personnel in order to accomplish the induction of a young man into the armed forces, or his exclusion therefrom. Because there are so many regulations, which are often complex, and because the individuals who are expected to comply with the regulations are not legal experts, procedural irregularities are frequent. Even the most casual glance at the case law will reveal a staggering array of deviations from the regulations which have been advanced as defenses to prosecutions for refusal to submit to induction." Oshatz v. United States, 404 F.2d 9, 12 (9th Cir. 1968).

Both courts endorsed the prevailing view that defenses based on procedural irregularities should succeed only where there has been substantial prejudice to the registrant. This standard has long been the law in the Ninth Circuit. *See, e. g.,* Wyman v. LaRose, 223 F.2d 849 (9th Cir. 1959); Talcott v. Reed, 217 F.2d 360 (9th Cir. 1954); Knox v. United States, 200 F.2d 398 (9th Cir. 1952). However, because some of the holdings in this circuit appear to be seriously at variance with this principle, the court deems it appropriate to consider at some length the current state of the law.

■ As a general rule, irregularities which deprive a registrant of valuable procedural rights are deemed prejudicial and therefore compel a judgment of acquittal. *See, e. g.,* United States v. Guymon, 438 F.2d 634 (9th Cir. 1971); United States v. Zablen, 436 F.2d 1075 (9th Cir. 1971); United States v. Karlock, 427 F.2d 156 (9th Cir. 1970). Conversely, inconsequential procedural irregularities will not support a judgment of acquittal. *See, e. g.,* United States v. Cralle, 415 F.2d 1065 (9th Cir. 1969); United States v. Martinez, 427 F.2d 1358 (9th Cir. 1970). Notwithstanding this distinction, irregularities arising from the relationship between the Selective Service System and the Armed Forces Entrance and Examining Station have presented more than the usual problems to the courts. In fact, such irregularities have engendered several cases which apparently diverge from the usual rule in this circuit. The court now turns to these cases.

In United States v. Briggs, 397 F.2d 370 (9th Cir. 1968), induction station personnel declined to give the defendant a physical inspection required by army regulations because of his announced intention to refuse induction. The court began by reciting the orthodox rule that the registrant must establish prejudice from failure to observe regulations. After noting the paucity of authority on the question before the court, the *Briggs* court held that the denial of a physical inspection should be held prejudicial. The court based its holding on an analogy to the doctrine of administrative remedies:

"An analogy drawn from exhaustion of administrative remedies cases indicates that the denial of a physical inspection should be held prejudicial. . . . If a registrant does not avail himself of the opportunity to fail a physical examination which might change his classification, he cannot contest the validity of an order to report on the basis that he was wrongly classified. . . . This same factor, the possibility of rejection and reclassification, indicates that denial of a physical inspection to appellant was prejudicial. In the exhaustion of administrative remedies cases, this possibility is deemed sufficiently important to justify refusal to consider a registrant's claims of error. It appears reasonable that this possibility be deemed equally important when the military disregards the requirements of a physical inspection." *Id.* at 374.

In closing, the court noted that it reached its conclusion notwithstanding the insignificant possibility of rejection.

"We could assume that the likelihood of rejection in appellant's case was slight. The physical inspection is relatively cursory, and appellant had recently passed a more rigorous exam-

ination. But the exhaustion of administrative remedies cases are concerned with the same odds. And the physical inspection is not a time consuming, resource wasting process. In short, the exigencies of the service do not justify disregard of the regulations in this instance just because the registrant is expected to refuse induction." *Id.*

It seems clear to this court that the defendant in *Briggs* did not in fact establish the existence of substantial prejudice from his failure to receive a physical inspection at the time of induction.

Similarly, in Oshatz v. United States, 404 F.2d 9 (9th Cir. 1968), the registrant was not given an opportunity to execute DD Form 98, the Armed Forces Security Questionnaire. The Court of Appeals held that this justified acquittal.

> "In this case Oshatz might not stand convicted of a felony had he been given the opportunity to execute the loyalty questionnaire. Under the rationale of our decision in Briggs v. United States, 397 *F.2d* 370 (9th Cir. 1968), that is sufficient prejudice to require reversal." *Id.* at 12.

The court specifically distinguished its holding in Welsh v. United States, 404 F.2d 1078 (9th Cir. 1968), rev'd on other grounds, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), on the ground that in the latter case the registrant himself refused to accept an opportunity to execute DD Form 98. There, the court declined to "presume prejudice from the Army's refusal to conduct a useless investigation of his political and social background," noting that the "Appellant did not offer to prove that an investigation by military intelligence would have uncovered evidence that he was a security risk." In the *Welsh* court's view, "rejection by the Army for sceurity reasons, like rejection for felony conviction, is wholly for the benefit of the Army and may be waived." *Id.*

at 1085. The court has some trouble in reconciling *Welsh* and *Oshatz.* If DD Form 98 is wholly for the benefit of the army, and the army has the option to induct without making an investigation no matter what the registrant's response to the form is, it is difficult to read into *Oshatz* more than the insignificant possibility of prejudice which existed in *Briggs,* absent some evidence that Oshatz was in fact a security risk. In sum, neither *Oshatz* nor *Briggs* required a defendant actually to demonstrate prejudice. In both cases, the court was willing to presume prejudice from the irregularities. More recent cases have reiterated the requirement of prejudice in their approach to the problem.[1]

In United States v. Brown, 438 F.2d 1115 (9th Cir. 1971), the court of appeals reversed the conviction of a registrant who did not receive a close physical inspection with his clothing removed at the time of his induction. Although the court cited *Briggs,* it went on to inquire whether this failure *in fact* prejudiced the registrant.

> "Had the induction station personnel followed the prescribed procedure, given Brown's marginal status, there is a significant possibility that he would have been rejected as unfit. The possibility of failing the minimum weight requirements under the circumstances would be apparent upon close examination of the inductee with clothing removed. The regulations require a thorough evaluation and an immediate determination of the examinee's fitness when an unrecorded defect is discovered. Brown's fitness was such a close question that the failure to accord him this opportunity to be rejected must be viewed as prejudicial." 438 F.2d at 1117.

The court thus found prejudice, but only because the registrant's "marginal status" created a "significant possibility" that he would have been rejected.

---

1. See United States v. Jenson, 450 F.2d 1258 (9th Cir. 1971), citing *Welsh,* *Oshatz,* and *Briggs* for the proposition that the crucial question is whether noncompliance with a regulation is prejudicial.

■ In response to the identical claim in United States v. Pace, 454 F.2d 351 (9th Cir. 1972), the court made it clear that the registrant must indeed demonstrate prejudice.

"We agree that, in order to establish that incompleteness of the physical inspection invalidated the induction proceedings, the registrant must show that prejudice resulted. With regard to the sufficiency of the showing of. prejudice, the rule is established in this circuit that if there is a significant possibility that the registrant would have been rejected as unfit, had he been afforded the kind of physical inspection prescribed by the above regulation, prejudice is indicated sufficient to invalidate the induction process." 454 F.2d at 356.

These two cases make it clear that the Ninth Circuit has not departed from the view that prejudice will not simply be "presumed" whenever there is an irregularity during induction center proceedings. This court, too, adheres to that view, as it must. However, its deference does not, and should not, take the form of a blind obedience to the literal language of the court of appeals' most recent pronouncement.[2]

The existence of prejudice may sometimes appear so plainly on the face of the record that the courts are compelled to acquit. At other times, the existence of prejudice is so plainly a figment of the defendant's imagination, or his counsel's ingenuity, that the courts are compelled to convict. Between these two extremes, as is so often the case in the law, situations arise which justifiably cause reasonable men, and judges, to differ. In United States v. Brown, su-

pra, for example, two members of the Ninth Circuit panel, Hamley and Ferguson, JJ., found prejudice and reversed the district judge, Zirpoli, who had found none. Judge Kilkenny, dissenting, agreed with the district judge. With this observation in mind, the court proceeds to a discussion of its recent holding in United States v. Dubay, CR–71 493 (N.D.Cal. December 15, 1971).

Dubay presented an unusual factual situation. The defendant took an enlistment physical on August 12, 1969. At that time, his deferment as a high school student had expired, but he was not yet classified I–A. The defendant subsequently changed his mind about enlisting in the Air Force. The board mailed a DD form 62, based on the defendant's enlistment physical, on December 18, 1969, classified the defendant I–A two months later on February 11, 1970, and sent an order to report for induction on April 17, 1970. After once failing to report, the defendant reported and refused on September 23, 1970. The defendant argued that the board's failure to receive certain medical records vitiated the DD Form 62 under 32 C.F.R. § 1628.25.

■ The court's judgment of acquittal was based on the mere possibility that the defendant was ordered to report for induction earlier than he might have been had the board processed him in typical fashion. Although the court explicitly adverted to the conflict between 32 C.F.R. § 1628.25 and the board's practice of issuing DD Form 62 without ever receiving certain medical records when a registrant had previously received an enlistment physical, the court was also aware that ordinarily a regis-

---

2. See Helvering v. Hallack, 309 U.S. 106, 119, 60 S.Ct. 444, 451, 84 L.Ed. 604 (1940) :

"We recognize that stare decisis embodies an important social policy. It represents an element of continuity in law, and is rooted in the psychologic need to satisfy reasonable expectations. But stare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision, how-

ever recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience."

Upon analysis, the court sees no "collision" among the cases it has discussed. Until such time as the court of appeals overrules any one of them, this court will continue to give each of them its proper effect.

trant is not ordered to report for a pre-induction physical until after he is classified I–A. See 32 C.F.R. § 1628.11. Under the court's analysis of the pertinent authorities in this circuit, the rationale of the *Briggs* holding retains its continuing vitality in such circumstances. When a class of registrants is routinely singled out for different treatment from others similarly situated, the courts may appropriately presume prejudice from any attendant irregularities in order to justify a judgment of acquittal.[3]

█ In the case now before the court, the situation is quite different. The defendant was treated no differently from other similarly situated registrants; the only irregularity was that the audiogram card and x-ray film were lost. The defendant claims that this fact compelled the local board to order a new pre-induction examination, presumably at the time the board should have discovered the documents were missing on December 15, 1966. However, this court will not presume prejudice from the board's failure to do so, nor will it require the board to perform useless acts in order to correct irregularities of this character. In circumstances such as are here presented, the defendant must show a "significant possibility" of prejudice in order to justify a judgment of acquittal.

█ This the defendant cannot do. He makes no claim that the tests were not given at his pre-induction physical on December 2, 1966 (the medical records make it clear that they were given), nor does he claim that they in fact disclosed any disqualifying defects.[4] All the defendant claims is that the failure of the local board actually to receive the missing documents somehow rendered his induction premature. The answer to this claim is simple: The defendant was not ordered to report for induction until more than three years after the irregularity occurred. In such circumstances, the issue of "prematurity" simply evaporates. Moreover, the defendant was twice reclassified between the date of his pre-induction physical and his induction date; the law is settled that such reclassifications normally cure any prejudice resulting from antecedent irregularities. See United States v. Jack, 451 F.2d 1272 (9th Cir. 1971). Accordingly, the defendant cannot rely either on the rationale of *Briggs, supra*, which this court applied in *Dubay, supra*, to a situation where the registrant was treated differently from other registrants as a matter of course, or on the existence of the "significant possibility" of prejudice required under *Brown, supra*.[5]

Defendant's motion for judgment of acquittal is denied.

---

3. In *Briggs, supra*, the court of appeals noted that the registrant's class was routinely treated differently in violation of the regulations. "Induction station personnel told appellant 'We don't give physicals to refusals.'" 397 F.2d at 373. Contrast this to the situation in *Brown, supra*, where "the procedure regularly followed at Brown's induction center (*and followed in his case*) does not include a physical inspection with clothing removed as a matter of course" in violation of the applicable regulations. 438 F.2d 1116 (emphasis added). Under the circumstances presented in *Dubay, supra*, this court was unable to conclude that the local board was operating in good faith and endeavoring to apply the controlling regulations impartially and to the best of its understanding.

4. The possibility of actual prejudice was conclusively negated by the registrant's successful completion of a physical examination, including both an audiogram and chest x-ray, on the scheduled day of his induction.

5. The court perceives no conflict between its holding here and its decision in United States v. Dubay, *supra*. To the extent that others may perceive such a conflict, the court no longer adheres to so much of that case as may be inconsistent with what the court has today decided.