UNITED STATES of America

v.

Burnis ASBELL, Jr.

No. 72–14–Cr–J.

United States District Court,
M. D. Florida,
Jacksonville Division.

Dec. 13, 1972.

As Amended Jan. 18, 1973.

John L. Briggs, U. S. Atty., Jacksonville, Fla., for plaintiff.

Carol Wild Scott, Gainesville, Fla., for defendant.

## OPINION

TJOFLAT, District Judge.

◼ The defendant is charged with refusing to submit to induction into the armed services in violation of 50 U.S.C. App. § 462(a). He waived his right to trial by jury and was tried before the Court. His only defenses are that the military authorities failed to make a decision as to his medical acceptability, required by 50 U.S.C. App. § 454(a),[1] before ordering him to submit to induction, and, alternatively, that there was no basis in fact in the record for a decision that he was medically acceptable. The government argues that a decision supported by facts in the record was made. The Court agrees with defendant that no decision of medical acceptability was made and, alternatively, that there was basis in fact for such a decision. Dei idant's motion for acquittal is therefore granted.

### The Facts

Defendant reported to the Armed Forces Examining and Entrance Station at Jacksonville, Florida, in June, 1971, for his pre-induction physical examination. Army Regulations require that an examinee not be accepted for induction if he suffers from

[c]haracter and behaviour disorders where it is evident by history and objective examination that the degree of immaturity, instability, personality

---

1. See note 6 *infra* and accompanying text.

inadequacy, and dependency will seriously interfere with adjustment in the military service as demonstrated by repeated inability to maintain reasonable adjustment in school, with employers and fellow workers, and other society groups.[2]

A possible psychiatric problem which might disqualify defendant under this regulation had been uncovered during an earlier visit to the examining station. Since a specialist in psychiatry was unavailable at the examining station, the military authorities decided to send defendant to a civilian psychiatrist for consultation.[3] He was sent to Dr. Whitehurst, who conducted an examination in his office in nearby Jacksonville that same day. After the examination was completed defendant was sent back to the military examining station with a hand-written note containing the doctor's preliminary diagnosis and recommendation to the military authorities. The note read as follows:

> No gross psychiatric disease. Inadequate personality. . . . This hedonistic, emotionally immature, individual shows marked lack of initiative and ambition—poor judgment and lack of adaptability and responsibilities. Do not recommend him for induction.[4]

Upon his return defendant presented the note to an individual who stamped it "Reviewed and Considered in Examinee's Physical Profile." This stamp and the appropriate blank space on defendant's medical papers indicating he was physically and mentally acceptable was later initialed by Dr. Cooperman, the medical officer responsible for making the decision as to defendant's acceptability. It is not clear whether defendant ever saw Dr. Cooperman in person after

he returned with the note. Defendant was the only witness to testify at trial. He vaguely recalled appearing briefly before some officer following his return, but he does not remember answering any questions. Nothing was placed in the record as a result of the appearance, and the government offered no testimony to attest to it. At some time during the day, only a very short time after his return, defendant was given his order to submit to induction which he refused to obey, resulting in the indictment in this case.

*The Decision of Medical Acceptability*

Section 462(a) of the Selective Service Act[5] makes it a criminal offense to refuse to comply with an order to submit to induction only if a duty to do so has been created by the preceding portions of the Act. Under the fifth paragraph of Section 454(a), a duty arises only if

> his acceptability in all respects, including his physical and mental fitness, has been satisfactorily determined under standards prescribed by the Secretary of Defense.[6]

Thus, if the decision as to defendant's physical and mental fitness had not been made prior to the time his order to submit was given, he could not have violated Section 462(a) as alleged in the indictment. If a decision was made, it must have been made between the time defendant returned from the examination by the civilian psychiatrist and the time he was ordered to submit to induction. During this period the only evidence in the record relating in any way to defendant's mental fitness was the civilian psychiatrist's hand-written note. Since the note contained only a diagnosis and recommendation which strongly suggested that defendant should not be

---

2.  Army Regulation 40–501, ¶ 2–34(b).

3.  The use of civilian specialists is authorized by Army Regulations. Army Regulation 40–3, 601–270.

4.  The government argues, and the Court will assume, that the recommendation of the civilian pyschiatrist that defendant

not be inducted is entirely gratuitous and in no way binding on the military authorities, who have the final and sole responsibility for making that decision.

5.  50 U.S.C. App. § 462(a).

6.  50 U.S.C. App. § 454(a).

inducted,[7] it is inconceivable that Dr. Cooperman would have made a conscious decision finding defendant acceptable without at least conducting a reasonably thorough examination himself. This is particularly so in view of the fact that the civilian psychiatrist was a specialist while Dr. Cooperman was not. There is some indication that defendant talked with Dr. Cooperman prior to receiving his order to submit, but the talk was too brief to suggest that Dr. Cooperman ever attempted to conduct his own examination. The Court finds, therefore, that the decision as to defendant's acceptability was never made prior to the time he received his order to submit. Rather, it is likely that defendant was processed through the examining station with mechanical adherence to procedure and a complete absence of any conscious decision making. Defendant's duty to submit to induction therefore never arose and his motion for acquittal must be granted.

The government urges that the Court should apply the presumption of regularity normally accorded the armed services in induction cases.[8] It is not necessary to discuss the presumption and its relat-ed problem of who bears the burden of proof once the presumption is defeated. Based on the record of this case the Court finds that defendant has defeated the presumption by a preponderance of the evidence.

*Basis in Fact*

■ Defendant also argues that there was no basis in fact in the record for the alleged decision that he was mentally acceptable. As is apparent from the above discussion, the Court agrees that there was no basis in fact.[9] The inquiry, however, does not end with that finding alone. The cases are clear that a defendant can rely on a procedural defect as a defense for violating the Selective Service Act only if he can show that he was prejudiced by the alleged defect.[10] The cases have not clearly enunciated the elements of the "prejudice" that the defendant must show. It is the opinion of this Court that two findings are required. First, the defendant must show that there is at least some likelihood that if it were not for the procedural defect he would have received the classification he was seeking.[11] Here the diagnosis and recom-

7. The civilian psychiatrist's medical conclusions contained in the hand-written note closely paralleled the language of the regulation setting the standard for physical and mental acceptability. *Compare* text at note 4 *supra with* text at note 2 *supra*.

8. *See* Oestereich v. Selective Service System, 393 U.S. 233, .241, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

9. At the time defendant was ordered to submit to induction the only evidence in the record dealing with his possible psychiatric problem was the hand-written note of the civilian psychiatrist containing his preliminary medical diagnosis and recommendation against induction. *See* notes 4 and 7 *supra*. The government strongly urges that we also consider the psychiatrist's final report which contains a summary of the facts upon which his medical diagnosis and recommendation were based. The additional facts would probably be sufficient to provide a basis in fact for a decision of acceptability. The report, however, was received by the military authorities several days after the alleged decision was made and defendant was ordered to submit. The "basis in fact" test must be applied at the time the decision under review was made, not after the record has been supplemented, because it is used not to measure the accuracy of the agency's decison, but rather to test the type of information upon which the agency relied. If there is no basis in fact in the record, we presume that the agency relied on factors outside the record, a clearly impermissible procedure.

10. United States v. Chaudron, 425 F.2d 605, 607–609 (8th Cir. 1970); Briggs v. United States, 397 F.2d 370, 372–374 (9th Cir. 1968); United States ex rel. Kempf v. Commanding Officer, 339 F. Supp. 320, 326 (S.D.Iowa 1972); United States v. Silver, 331 F.Supp. 415 (D.Minn. 1971) (creating a *presumption* of prejudice).

11. *See* United States v. Chaudron, 425 F. 2d 605, 608–609 (8th Cir. 1970); United States ex rel. Kempf v. Commanding Of-

mendation of the civilian psychiatrist are sufficient to support such a finding. Second, the defendant must show that the classification which he was denied as a result of the procedural defect was intended for his, rather than solely the military's, benefit. It is generally accepted in the cases dealing with medical deferments that this classification was intended, at least in part, for the benefit of the individual registrant,[12] and this conclusion is supported by the language of the medical exemption provision. The wording of the present Selective Service Act is neutral and provides no hint of congressional intent.[13] The wording of the comparable provision in the preceding Selective Service Act, however, is more helpful:

> No person shall be inducted for training and service under this title unless and until he is acceptable to the armed forces for such training and service and his physical and mental fitness for such training and service has been satisfactorily determined under standards prescribed by the Secretary of Defense.[14]

The first part of this provision permits an individual to be inducted into the armed forces only if he is "acceptable to the armed forces." The use of the word "to" indicates that this portion of the sentence was intended for the benefit of the armed services only. The second part of the provision permits the military to induct an individual only if he is physically and mentally fit for military service. The absence of the phrase "to the armed forces" indicates that this portion of the sentence was intended for the benefit of the inductee as well as the military. Such a construction of the provision is not unreasonable. Presuma-

bly Congress would want to permit the military to establish minimum standards for military service, but at the same time preclude the military from setting standards so low that the physically and mentally handicapped would be subjected to the demands of military life. The Court, therefore, concludes that the medical deferment was intended, at least in part, for defendant's benefit.

Since the decision that defendant was physically and mentally acceptable for induction was procedurally defective to the defendant's prejudice, his motion for acquittal must be granted.

12. *E. g.*, United States v. Silver, 331 F. Supp. 415, 417 (D.Minn.1971). *But see* Briggs v. United States, 397 F.2d 370, 374 (9th Cir. 1968).

13. 50 U.S.C.App. § 454(a) provides:
No person shall be inducted into the Armed Forces for training and service

or shall be inducted for training in the National Security Training Corps . . until his acceptability in all respects, including his physical and mental fitness, has been satisfactorily determined under standards prescribed by the Secretary of Defense.

14. Selective Service Act of 1948, Ch. 625, § 4(a), 62 Stat. 606 (1948).