**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Daniel Owen LLOYD, Defendant-Appellant.**

**No. 25337.**

United States Court of Appeals, Ninth Circuit.

Aug. 28, 1970.

James G. Seely, Jr. (argued), Nathan S. Smith, San Francisco, Cal., Daniel Owen Lloyd, for appellant.

Coleman Besee (argued), Ass't. U. S. Atty., James L. Browning, U. S. Atty., F. Steele Langford, Ass't. U. S. Atty., Jerrold M. Ladar, Chief, Criminal Division, San Francisco, Cal., for appellee.

Before HAMLEY, DUNIWAY and WRIGHT, Circuit Judges.

DUNIWAY, Circuit Judge:

Lloyd was convicted of refusing to submit to induction into the Armed Forces in violation of 50 U.S.C.App. § 462 and he appeals. He raises a number of questions, each of which we consider separately.

1. *Trial solely on the Selective Service File—Right to Confrontation.*

The charge was refusal to submit to induction, having been ordered to report for induction and having reported as ordered and been found qualified. (50 U.S.C.App. § 462.)

The trial court instructed the jury that the only questions for it to decide were whether Lloyd "failed to submit for induction into the Armed Forces of the United States, after he had reported as ordered by the Local Board," and whether "the omission or failure to submit was wilfully and knowingly done."

The only evidence offered by the government was a certified and authenticated copy of Lloyd's Selective Service file. No witness testified for the government. The court received the file in evidence as Exhibit 1, and the government rested. Lloyd's counsel objected on the grounds (1) that the procedure violated his right, under the Sixth Amendment, to confront and cross-examine his accusers, and (2) that the documents constitute hearsay. The objection was overruled. The only paper in the file that supports the jury's decision of the limited questions presented to it by the court appears at pp. 37–39 of Exhibit 1. It is a copy of a form letter from a Lieutenant Orr, "Induction Officer" at the armed forces induction center, prepared, as it recites, pursuant to paragraph 40c, AR 601–27 dated 2 August, 1965. It states what happened, in relation to Lloyd, at the induction center. If properly admitted, it fully supports a finding that Lloyd refused to be inducted, knowing that his doing so was a violation of law. The file also contains papers showing that the board ordered Lloyd to report for induction.

Whatever we might think of this manner of proving a criminal charge, as an original proposition, a "solid wall of authority" (United States v. Scott, 9

Cir., 1970, 425 F.2d 55, 57) in this circuit supports the trial court's ruling. Haven v. United States, 9 Cir., 1969, 403 F.2d 384, and cases there cited. Most closely in point are LaPorte v. United States, 9 Cir., 1962, 300 F.2d 878, and Yaich v. United States, 9 Cir., 1960, 283 F.2d 613, 616–618. We are unable to distinguish them. See also United States v. Van Hook, 7 Cir., 1960, 284 F.2d 489, 492–494. No case cited by Lloyd is to the contrary; none involves comparable facts.

### 2. *Denial of right to subpoena witnesses.*

Lloyd argues that he was denied the right to have compulsory process for obtaining witnesses in his favor, in violation of the Sixth Amendment. He sought and obtained subpoenas requiring the presence of the three members of the Local Board and of its Clerk and the "production of all books, papers, records, etc., which pertain to the classification and attempted induction of defendant." The court granted the government's motion to quash the subpoenas. The docu-

ments, however, were produced, and Lloyd now argues only that the witnesses should have been produced.

The court ruled that the validity of the induction order was for the court, not the jury to decide. It told Lloyd's counsel that if he needed any of the witnesses for the purpose of attacking the validity of that order or of the proceedings of the board leading up to it, the court would hear them. It was agreed that counsel would make a written offer of proof, which was done. The court declined to call the witnesses.

■ Preliminarily, we observe that we agree that the questions sought to be presented were for the judge, rather than the jury. Cox v. United States, 1947, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; United States v. Morico, 2 Cir., 1969, 415 F.2d 138, 142; Kidd v. United States, 10 Cir., 1967, 386 F.2d 422. It may still have been error for the judge to refuse to subpoena any of the witnesses. Whether that is so depends on what it was that counsel sought to prove. His offer is a three page document containing 16 paragraphs.[1] Consideration of

---

1. "Defendant offers to prove the following facts by the testimony and medical records of D. S. Sedgwick, M.D.:

 1. That at all times during the period when defendant was being processed by Local Board No. 59, defendant was and now is physically disqualified for military service.

 2. That in the light of the applicable army regulations concerning physical defects, it would be impossible for an examining physician to examine the defendant and reach the conclusion (a) that the defendant does not have 'acute sinus condition due to allergy and recurring nasal polyps,' or in the alternative (b) that this defect is not disqualifying.

 Defendant offers to prove the following facts by the testimony and records of Theodore A. Harbert, Dr. Harold G. Anderson, Emmet L. Rittenhouse and Lois L. Helm:

 1. That Local Board No. 59 failed to consider the defendant's claim for exemption as a conscientious objector.

 2. That if the board did consider said claim, it applied an erroneous standard in its determination thereof.

 3. That Local Board No. 59 at no time considered defendant's claim for classification in Class 4–F because of a disqualifying medical condition.

 4. That Local Board No. 59 or its agents violated Local Board Memorandum No. 41 by either (a) treating the defendant's case as though he had not filed a claim for conscientious objector status, or (b) treating such claim as having been withdrawn in the absence of a written withdrawal signed by the defendant.

 5. That Local Board No. 59 had no substantial evidence and no factual basis for rejecting defendant's claim to conscientious objector status.

 6. That Local Board No. 59 had no substantial evidence and no factual basis for rejecting the defendant's claim to classification in Class 4–F by reason of medical defects.

 7. That Local Board No. 59 had no legal authority for ordering more men for induction than the number specified in the notices of call received from the State Director of Selective Service.

 8. That Local Board No. 59 abused its discretion in the process of classifying de-

these offers will be simplified by a consideration of what type of oral testimony about local board proceedings is appropriate.

Congress has provided, in Section 10 of the Selective Service Act as amended (50 U.S.C. App. § 460(b) (3)), that the local board shall:

" * * * have the power * * * to hear and determine, subject to the right of appeal * * * all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this title [said sections], of all individuals within the jurisdiction of such local boards. The decisions of such local board shall be final, except where an appeal is authorized and is taken. * * * "

It has then provided for appeal boards, and that:

"The decision of such appeal boards shall be final * * * unless modified or changed by the President."

There is provision for further appeal to the President, and that "the determination of the President shall be final." The section continues:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [section 462 of this Appendix], after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided*, That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant."

Under the Statute and the Regulations, 32 C.F.R. ch. XVI, the local boards have both quasi-judicial and purely administrative (in many cases ministerial) duties. The classification process is essentially quasi-judicial in character, although there are also procedural regula-

---

fendant in that it failed to exercise any of its powers under 32 C.F.R. sections 1621.-14(a), 1621.14(b), 1621.15, 1626.2(b), 1626.23, 1623.1(b) and 1625.1(c).

9. That Local Board No. 59 abused its discretion in the process of classifying defendant when it did not carry out the intent of Congress that the 'system of selection be fair and just.'

10. That the Selective Service file introduced in evidence by the Government is incomplete in that it does not contain a letter from D. S. Sedgwick, M.D. which was obtained by the defendant and delivered to the authorities at the Armed Forces Entrance and Examining Station at Oakland, California, at the time of his pre-induction physical examination.

11. That Local Board No. 59 and Philip T. Boyle, its Appeal Agent, abused their discretion in failing to reopen the defendant's case after the appointment of counsel to consider facts which were not considered by the board at the time defendant was classified.

12. That during the process of classifying defendant Local Board No. 59 completely deprived defendant of his rights under the 5th and 6th Amendments to the United States Constitution, including his right to due process of law, his right to counsel, his right to compulsory process for obtaining witnesses and his right to public trial by an impartial jury.

13. That during the process of classifying defendant Local Board No. 59 and its agents completely failed to provide the defendant with any assistance or advice though it was apparent he was in dire need thereof.

14. That it is customary for Local Board No. 59 to classify members of the Jehovah's Witnesses in Class I-O.

15. That the members of Local Board No. 59 and its agents, including Philip T. Boyle, were aware prior to the time defendant was classified I-A that the Jehovah's Witnesses in Santa Cruz County had been receiving misinformation to the effect that they could not be classified I-O unless they could prove that they were full-time ministers.

16. That despite this information Local Board No. 59 and its agents made no effort whatsoever to prevent misclassification of Jehovah's Witnesses resulting from such erroneous information that was being circulated among Jehovah's Witnesses."

tions designed to facilitate the boards' performance of their quasi-judicial duties.

When Congress, albeit in a somewhat backhand manner, authorized judicial review of classification in a criminal case such as this, it had in mind the usual type of review of a quasi-judicial decision of an administrative body, that is, a review upon the record made by that body. More specifically, Congress did not intend to permit a full-dress trial *de novo* by either the judge or the jury, of the registrant's proper classification. When Congress spoke of "no basis in fact for the registrant's classification," it meant "no basis in fact" in the local board's record. Thus the court was not required to hear, and it would have been improper for it to hear, testimony as to whether Lloyd was in fact not physically fit, or whether he was in fact a conscientious objector, in passing upon the "basis in fact" issue. It was required to confine itself to Lloyd's Selective Service file. These views dispose of paragraphs 1, 2, relating to the proposed witness Dr. Sedgwick, and paragraph 5, 6, 9, and in part, 14, 15 and 16, relating to other witnesses, in Lloyd's offer of proof.

Moreover, Congress did not authorize the defendant to try the members of the board by calling them as witnesses and examining them about their mental processes in arriving at their classification decisions. It would no more be proper to do that than it would be for this court to subpoena a trial judge, or the members of a jury, on an appeal, and examine him or them as to how they arrived at a decision. These views dispose of paragraphs 1, 2, 3, 4, 11, 12, 13 in part, 14, 15 and 16 of Lloyd's offer of proof relating to witnesses other than Dr. Sedgwick.

Lloyd's paragraph 7 relates to a pure question of law. The same can be said, in part, of paragraphs 8, 9 and 11.

On the other hand, it is proper to offer testimony to show that a local board has not followed the statute or regulations in "processing" a registrant's case, when that fact does not appear from the Selective Service file. Only one paragraph of the offer of proof, paragraph 7, relates to this issue. But it does not state any facts to which any of the witnesses might or would testify. It is therefore insufficient.

This leaves only paragraph 10. It is conceivable that the letter referred to would demonstrate that there was no basis in fact for the medical examiner's decision that Lloyd was physically acceptable. Here, however, there is no showing as to the contents of the letter. It should have been easy for counsel to make that showing, but he did not do so, nor did he make any showing that a copy of the letter was not available to him. For these reasons, it was proper for the court to reject the offer.

### 3. *The trial court's failure to make findings of fact.*

As we have seen, the questions submitted to the jury were narrow. It is now argued that, under Rule 23(c), F.R. Crim.P., the trial judge should have made findings of fact on all other issues raised by Lloyd. Proposed findings were submitted. They cover four pages of legal cap, and number 38. They suffer from the same defects as the offer of proof. In general, they refer either to matters that were not properly before the court, or matters that appear from the Selective Service file. As to the former, findings would not be proper; as to the latter, they are unnecessary. Some relate to the order of call, which is discussed *infra*. We find no error in the court's failure to make findings.

### 4. *Denial of right to counsel.*

Lloyd argues that he was denied his Sixth Amendment right to assistance of counsel. To the extent that this argument is based on Lloyd's lack of counsel during deliberations by the Local Board, but prior to indictment, we find another "solid wall" of case law against his position. See United States v. Evans, 9 Cir.,

1970, 425 F.2d 302; Haven v. United States, *supra.*

Lloyd also argues that the effectiveness of counsel at his trial was diluted as a result of various rulings of the trial court. Since we uphold those rulings on this appeal there is no merit in this contention.

### 5. *Cruel and unusual punishment.*

▌ Lloyd argues that his only crime was "ignorance," and asserts that his eighteen month sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment. 50 U.S.C. App. § 462 provides for a sentence of up to five years in prison for refusing induction. The sentence in this case was clearly within the limits of the statute. The settled rule is that appellate courts will not change a sentence that falls within the limits of the statute. See Bryson v. United States, 9 Cir., 1959, 265 F.2d 9, 13; Pocatello v. United States, 9 Cir., 1968, 394 F.2d 115; McCartney v. United States, 9 Cir., 1967, 382 F.2d 116.

### 6. *Validity of Order of Induction.*

Lloyd makes a three pronged attack on the validity of his induction order. We consider each.

### a. *Proof that the Local Board considered Lloyd's Conscientious Objector claim on its merits.*

When Lloyd registered for the draft he filled out a Classification Questionnaire (SSS Form No. 100). On Series VIII of that form he claimed to be a conscientious objector by placing his signature beneath the following statement:

"I claim to be a conscientious objector by reason of my religious training and belief and therefore request the local board to furnish me a Special Form for Conscientious Objector (SSS Form No. 150)."

The Local Board mailed Lloyd the Form 150, but he failed to fill it out and return it. Thus the Local Board was furnished no information regarding Lloyd's claim to be a conscientious objector. However, under Local Board Memorandum No. 41, Lloyd's signature to Series VIII of the Form 100 constituted a claim of conscientious objector status. The memorandum further requires that "the claim shall not be considered to have been withdrawn until the registrant voluntarily submits, and there is filed * * * a written statement signed by him specifically withdrawing the claim." Lloyd argues that under these circumstances the government had the burden of showing that the Local Board considered and rejected his claim to conscientious objector status.

▌ While it is true that once a registrant has met the statutory criteria for the conscientious objector exemption or has made a prima facie showing of entitlement, a local board must state its reasons for denying the requested classification, Mount v. United States, 9 Cir., 1970 (No. 24,902, April 15, 1970); United States v. Haughton, 9 Cir., 1969, 413 F.2d 736, 739, we hold that in this case Lloyd failed to make a prima facie showing. This court recently decided an analogous question in United States v. Enslow, 9 Cir., 1970, 426 F.2d 544. In that case the defendant attempted to raise an argument about the requirement for conscientious objector status. He too had claimed to be a conscientious objector on his Form 100 and he too had failed to submit SSS Form 150. Local Board Memorandum 41 applied in that case as well. We said in *Enslow*:

"[S]ection 1623.1(b) of the Selective Service Regulations, 32 C.F.R. § 1623.-1(b), requires that the local board determine a registrant's classification solely on the basis of official forms and other written information in the registrant's file. See also section 1625.2. The burden is on the registrant to establish *facts* which warrant a classification other than 1-A. See section 1622.20 and Bishop v. United States, 412 F.2d 1064, (9th Cir. 1969). Having failed to give the local board any *facts* [5], upon which they could determine his conscientious objector claim, he cannot now, after this com-

plete bypass of the local board, raise the failure to grant the exemption as a defense in a prosecution for refusal to report for induction. * * *" Footnote 5, "We do not view the conclusory statement contained in Series VIII, Form 100, as a *fact* establishing a prima facie case for exemption." This reasoning is controlling in the present case. Because Lloyd failed to present his Local Board with a prima facie case entitling him to the exemption, the Board was under no obligation to explain its refusal to grant him a conscientious objector classification.

b. *Medical claim; failure to order Lloyd to present himself for medical interview.*

In Series XI of his Form 100, Lloyd claimed the following disqualifying defect, "acute sinus condition due to allergys [sic] and reoccurring [sic] nasal polyps." 32 C.F.R. § 1628.2(b) requires the local board to order a registrant who claims to have a disqualifying physical condition to present himself for an interview with the board's medical advisor. Lloyd's board instead sent him the following letter:

"You state in your questionnaire that you have a physical defect which you believe will disqualify you for service in the armed forces.

"If you have been treated by a physician for the physical defect reported, it would be helpful if you would have the physician provide this local board with a letter verifying the defect so that the medical examiner can have the benefit of such information in reaching a determination of your acceptability for service. We wish to caution you, however, that this local board is in no position to assume any expense that might be involved in obtaining this information.

"If you have not been treated by a physician you will at the time of your physical examination have an opportunity to discuss your physical condition with the medical examiner and

present any information you wish to have considered."

Lloyd did not answer the letter and was never ordered to appear before the board's medical advisor. He was later given a preinduction physical at which he again claimed nasal infection and surgery for recurring nasal polyps. The medical examiner considered these claims and still found him fit for service.

Lloyd argues he was prejudiced by his Local Board's failure to order him to a medical interview. In this case the Local Board was presented only with Lloyd's unsupported assertion that he had a disqualifying defect. The board, reasonably we think, requested that Lloyd submit amplifying and authenticating information. When Lloyd failed to do so, the board was justified in ordering him to report for a physical. 32 C.F.R. § 1628.4 (e) provides:

"[i]f the local board determines that the registrant does not have a disqualifying medical condition * * * or if the local board has *any doubt* concerning the existence of any such condition or defect, the local board shall order the registrant to report for armed forces physical examination as provided in section 1628.11." (Emphasis added.)

 While Lloyd did claim a disqualifying defect, thus bringing § 1628.2 (b) of the regulation into play, we think that the letter sent to Lloyd by the board is a reasonable preliminary to implementing the regulation. Its obvious purpose is to obtain medical corroboration of what is, without it, a mere claim, thus screening out unsupportable claims before burdening both the registrant and the board's medical advisor with an interview. Lloyd's failure to respond in any way gave the board a basis for determining either (a) that Lloyd did not have the claimed disqualifying defect or (b) that there was serious doubt that he had it. This brought § 1628.4(e) into play.

As in United States v. Smith, 9 Cir., 1970, 423 F.2d 559, we find no prejudice.

c. *Order of call.*

Lloyd argues that his induction was invalid because he was not called in the required order. His Local Board followed the State Director's order to call all delinquents in addition to the number of men specified by the Director to fill the monthly quota. An examination of the Local Board's delivery list shows that Lloyd would have been included in the call for that month even if the delinquents had been included first in the order of call as required by 32 C.F.R. § 1631.7, and even if they had been called as part of, and not in addition to, the number specified by the Director.[2] We also note that under the decision in Gutknecht v. United States, 1970, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532, it now appears that the delinquents should not have been called out of order.

2. The call No. 218, was for 10 men plus delinquents. The order of call prepared by the Board is as follows:

*Sheet 1:*

| No. | Birth year | Name | Disposition Inducted | Failed to report |
|---|---|---|---|---|
| 1 | 47 | Rogers, D. J. | x | |
| 2 | 47 | Anderson, I. H. Jr. | | x |
| 3 | 47 | Concepcion, D. J. | x | |
| 4 | 48 | Stinger, J. H. III | | x |
| 5 | 48 | Rogsac, J. Q. | x | |
| 6 | 44 | Elgin, W. G. | | x |
| 7 | 50 | Gile, R. J. | x | volunteer |
| 8 | 49 | Hirokawa, R. Y. | x | volunteer |
| 9 | 47 | Lloyd, D. O. | refused | |

*Sheet 2:*

| | 47 | Love, J. R. | x | |
|---|---|---|---|---|

*Sheet 3:* *Delinquents*

| | 46 | Arnaz, M. R. | | x |
|---|---|---|---|---|
| | 48 | Grim, J. R. | pending mental | |
| | 44 | Kidd, R. A. | x | |

If § 1631.7 of the regulations had been followed, the list would have read:

(1) *Delinquents*
1 44 Kidd, R. A.
2 46 Arnaz, M. R.
3 48 Grim, J. R.

(2) *Volunteers*
4 50 Gile, R. J.
5 49 Hirokawa, R. Y.

(3) *Nonvolunteers*
6 44 Elgin, W. G.
7 47 Rogers, D. J.
8 47 Anderson, I. H., Jr.
9 47 Concepcion, D. J.
10 47 Lloyd, D. O.
11 47 Love, J. R.
12 48 Stinger, J. H., III
13 48 Rogsac, J. Q.

The principal pertinent information not in the record is the birth dates of those born in each year. Consequently, the men are listed in the same order, within each birth year, as the Board listed them. This applies what is left of the presumption that the Board acted correctly. Nowhere in his offer of proof did Lloyd seek to establish the birth dates. We can hardly assume that he would have been at the bottom of the list of those born in 1947. He was born on July 28, 1947. Thus our reconstructed list gives as full effect to § 1631.7 of the regulations as the record permits. There is nothing in the record, except the year of their birth, to show that Stinger and Rogsac were improperly listed ahead of Lloyd, but we think that, absent other evidence, that is enough to warrant listing them after Lloyd.

There is no proof that the calls in any prior month were such as to accelerate Lloyd's order to report for induction. It is not shown that the State Director, in preparing the delivery list for the Local Boards in California, including the estimated number of delinquents, was exceeding the total demand placed on him by the Director of the Selective Service. Thus Lloyd has not provided proof that men should have been called before him but·were not. Yates v. United States, 1 Cir., 1968, 404 F.2d 462, 466. See also United States v. Baker, 9 Cir., 1969, 416 F.2d 202.

Moreover, the evidence in this case shows that very few delinquents who were called were actually inducted. Most failed to report. Others were found disqualified when they did report. Also, nearly every month there were one or more non-delinquents who failed to report or who were not inducted for various reasons when they did report. It seems fairly obvious that if, in determining the board's quota for each month, the Director had included an estimated number of delinquents, instead of ordering that they be ordered to report in addition to the number in the quota, the Director would have had to fix a higher quota. There is no way in which we can say that, if the Director had fixed quotas in the way Lloyd argues that he should have, Lloyd would not have been called when he was. We think that the method used by the State Director in fixing quotas was reasonable. And if we apply *Gutknecht, supra*, to what he did, Lloyd's argument collapses.

7. *Failure of the Board to give Lloyd advice.*

Lloyd argues that when he went to his Local Board in October of 1966 to fill out a Current Information Questionnaire he should have been advised regarding possible exemptions. There is no allegation or proof that Lloyd requested assistance at any time during this visit. In light of this fact we find no merit in the argument.

8. *Lack of due process as basis in fact.*

Lloyd contends that he was denied due process by the Board's actions and that there was no basis in fact for his 1-A classification. These claims are essentially rewordings of his prior arguments regarding his conscientious objector and physical defect claims. Since we have decided these issues against him we need not discuss them further.

The foregoing disposes of all of Lloyd's contentions that relate to what happened in the Local Board and in the trial of his case. Thus his conviction is valid, unless what happened out of court, after he was indicted, affects the validity of the judgment. To that problem we now turn.

9. *Failure of State Director to exercise his discretion.*

After Lloyd had been indicted, his court appointed counsel ascertained that he had been a Jehovah's Witness for many years. He asked Lloyd why he had not submitted an SSS Form 150 claiming conscientious objector status. Lloyd answered that he had been advised and believed that one had to be a minister in his church in order to be granted conscientious objector status. At this point Lloyd's attorney helped him fill out a Form 150 and submitted it to the Board. The attorney also communicated with the appeal agent for Lloyd's Local Board. The appeal agent advised him that the Local Board's discretionary powers probably did not allow it to reconsider Lloyd's classification on its own initiative once an order to report for induction was issued unless there was a showing of a change in circumstances beyond Lloyd's control. See 32 C.F.R. § 1625.2. In this he was clearly right. Even if Lloyd had made such a showing to the Board, it came too late to require the Board to act. Palmer v. United States, 9 Cir., 1968, 401 F.2d 226.

The appeal agent did write to the United States Attorney's office suggesting that that office could obtain a reopening of classification by requesting it of Lloyd's Local Board or by refusing to prosecute. The United States Attorney rejected this approach, correctly, we think; he is not a part of the Selective Service System. But he did say that he would seek dismissal of the indictment if

the State Director ordered the Local Board to reopen Lloyd's classification.

Lloyd's attorney then wrote to the State Director of Selective Service presenting him with information about Lloyd's religion and erroneous belief about the requirements for conscientious objector status, and requested that the State Director order the Local Board to reopen Lloyd's classification. He received the following reply:

"In your letter dated September 25, 1969, you request a State Director reopening pursuant to section 1625.3 of the Selective Service Regulations.

"In this regard, the registrant has been reported to the United States Attorney and jurisdiction in the matter lies with that official. We *must* therefore respectfully decline to intervene." (Emphasis added.)

At this juncture Lloyd was faced with a conundrum. The United States Attorney claimed it was up to the State Director to act and the State Director claimed he must defer to the United States Attorney. We think that the State Director had the authority to order the Local Board to reopen Lloyd's classification even after he had been indicted. The Selective Service Regulations provide that "[t]he local board shall reopen and consider anew the classification of a registrant upon the written request of the State Director of Selective Service or the Director of Selective Service and upon receipt of such request shall immediately cancel any order to Report for Induction * .* * which may have been issued to the registrant." 32 C.F. R. § 1625.3(a). This regulation is couched in broad terms and places no time limit on the State Director's power to act. Evidence that the State Director's authority continues even after the registrant has refused induction is provided by 32 C.F.R. § 1625.14 which provides that

"[t]he reopening of the classification of a registrant by the local board shall cancel any Order To Report for Induction * * * which may have been issued to the registrant, except that if the registrant has failed to comply with either of those orders, the re-

opening of his classification thereafter by the local board for the purpose of placing him in Class IV-C or Class V-A shall not cancel the order with which he failed to comply."

Thus it is clear that an order to reopen a registrant's classification will cancel an order to report for induction (with the two exceptions noted above, neither of which is relevant in this case) even if the registrant has refused to step forward. This, we think, is consistent with the nature of the power conferred on the State Director. It is a dispensing power, akin to, although not as broad as, the pardoning power. We find that it was within the power of the State Director to order the Local Board to reopen Lloyd's classification even though he was under indictment for failure to comply with an order to report for induction.

It is clear from reading the State Director's letter that he believed that he could not intervene once the United States Attorney had entered the case. While we would not disturb the State Director's exercise of his discretion in this matter, due process does require that this discretion be exercised. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268, 74 S.Ct. 499, 98 L.Ed. 681.

The judgment is vacated pending an exercise by the State Director of his discretion in considering Lloyd's request that the Board be ordered to reopen Lloyd's classification. Should the State Director refuse to order Lloyd's classification reopened the verdict entered below will stand and the judgment may be reinstated. If the classification is reopened, the action will be dismissed.

## ORDER

PER CURIAM:

After the filing of the opinion of this court in this case on August 28, 1970, 431 F.2d 160, the United States has moved to augment the record to show that the State Director has exercised his discretion and refused to order Lloyd's classification reopened. We have granted that motion. Accordingly, that part of the

judgment of this court vacating the judgment of the trial court is stricken. The judgment appealed from is affirmed.