UNITED STATES of America, Appellee,

v.

Peter Ward PACE, Appellant.

No. 71–2235.

United States Court of Appeals, Ninth Circuit.

Jan. 10, 1972.

352

Sol Zeltzer, San Jose, Cal., for appellant.

James L. Browning, Jr., U. S. Atty., Michael Field, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLEY and HUFSTED-LER, Circuit Judges, and SMITH, District Judge *.

HAMLEY, Circuit Judge:

Peter Ward Pace appeals from a conviction, at a non-jury trial, for failure to report for induction, in violation of 50 U.S.C. App. § 462.

Pace registered with Local Board 33, Stockton, California, on February 3, 1964. After giving him several II–S deferments, the local board classified Pace I–A on August 29, 1968. The agency medical examiners gave him a complete physical examination on October 22, 1968, and found him acceptable. On April 17, 1969, the board ordered Pace to report for induction on May 21, 1969. On April 28, 1969, the board received Pace's written request for a Selective Service System Form 150, to be utilized in requesting conscientious objector status. On May 5, 1969, the board received Pace's Form 150 application.

On May 13, 1969, the board considered this application pursuant to 32 C.F.R. § 1625.2, at which time all five members signed a statement that the "Board believes that the registrant is not sincere in his Conscientious Objection because of the sudden accession of beliefs unsupported by other facts." However, in the notice sent to Pace on May 14, 1969, the executive secretary of the local board advised Pace that the board determined not to reopen the classification because it did not specifically find there had been a change in status resulting from circumstances over which Pace had no control.[1]

On May 16, 1969, Pace and a female companion, Susan Jacobs, met with Ma-jor T. C. Armstrong, Jr., at the State Selective Service headquarters in Sacramento, California, to request reopening of Pace's classification.[2] On May 20, 1969, Major Armstrong wrote to Pace, with a copy to the board, expressing the view that Pace had been issued a lawful order to report for induction and it was incumbent upon him to obey that order. On May 21, 1969, Pace reported to the Armed Forces Examining and Entrance station, was given a physical inspection and found qualified, but refused to submit to induction. This prosecution followed.

On appeal Pace argues that the State Director arbitrarily limited the full scope of his authority contrary to the regulations, and failed properly to exercise his discretion pursuant to the regulations, thereby depriving defendant of due process.

■ Under 32 C.F.R. § 1625.3, the local board is required to reopen and consider anew the classification of a registrant upon the written request of the State Director. Upon receipt of such a request, the local board, under that regulation, must immediately cancel any outstanding order to report for induction. Thus, under the express terms of this regulation, the State Director's power to act is not precluded by the prior issuance of an order to report for induction. The power conferred upon the State Director is a broad dispensing power. Due process requires that the State Director exert that power by exercising his own discretion in determining whether to request a local board to reopen a classification. United States v. Lloyd, 431 F.2d 160, 171 (9th Cir. 1970).

---

* The Honorable Russell E. Smith, United States District Judge for the District of Montana, sitting by designation.

1. This has reference to the proviso in 32 C.F.R. § 1625.2 which prohibits a local board from reopening a classification after an induction order has been mailed "unless the local board first specifically finds there has been a change in the registrant's status resulting from circum-stances over which the registrant had no control."

2. At this conference, Pace presented a letter addressed to the State Director explaining that his delay in applying for conscientious objector status was due to his hesitancy to hurt his parents, who did not approve of conscientious objector exemptions.

Pace asserts that the State Director refused to exercise the discretion vested in him by 32 C.F.R. § 1625.3. According to Pace, Major Armstrong, acting for the State Director, told Pace that he could not intervene, that he could only act upon recommendations of the local board. In making this assertion, Pace relies upon his version of his conversation with Major Armstrong, as recounted in a letter Pace wrote to his local board on May 27, 1969, and as he and Susan Jacobs testified to at the trial.

But whatever Major Armstrong may have told Pace during their conference, the best evidence as to whether the State Director or his representative exercised his discretion in this matter is to be found in the letter, dated May 20, 1969, which Major Armstrong wrote to Pace after this conference. The material part of that letter is set out in the margin.[3]

This letter, a copy of which went to the local board, does not demonstrate that the State Director thought he did not have power to intervene unless the local board so recommended. Rather, the letter indicates to us that the representative of the State Director made his own independent study of the matter and determined therefrom, in the exercise of his discretion, that there was no good reason why he should intervene. We will not disturb that exercise of discretion. See United States v. Schrader, 435 F.2d 854, 855 (9th Cir. 1970); United States v. Lloyd, supra, 431 F.2d at 171.

Pace also argues that Major Armstrong's statement to Pace that the State Director could not reopen the classification except upon recommendation of the local board, being "erroneous and misleading," greatly inhibited Pace in presenting to the State Director further relevant evidence or information. This evidence, Pace asserts, would have pertained to such matters as the "peculiar equities" in his case, "public policy" present, the "clear prima facie nature" of Pace's claim, and his willingness to serve the Government in a legitimate capacity in alternate civilian service. In this connection Pace relies upon United States v. Lansing, 424 F.2d 225 (9th Cir. 1970), pertaining to conduct on the part of Selective Service officials which misleads the registrant.

The statements in Lansing upon which Pace relies, however, are there expressly restricted to a narrowly limited class of cases. 424 F.2d at 226. Under Lansing, this court recognizes a defense to a criminal prosecution for refusing induction only in very extreme cases where there has been unconscionably misleading conduct by the local board. See United States v. Lowell, 437 F.2d 906, 907 (9th Cir. 1971). Lansing further held that more was required than a simple showing that defendant was as a subjective matter misled, and that the crime resulted from his mistaken belief. 424 F.2d at 227. Under the above principles, we do not think that the actions of Major Armstrong, representing the State Director, were unconscionably misleading. He undertook, as promised, a review of Pace's file; and his letter to Pace following that review indicates, as we have determined above, a proper exercise of his discretion rather than an arbitrary or erroneous limiting of his authority.

In any event, we find no indication in the record that Pace was misled into withholding from anyone any relevant information or evidence of the kind de-

3. "A telephonic review of your selective service file conducted this date with your local board, discloses that you have been afforded all of your procedural rights under due process and no irregularities in the actions of the local board are noted.

"A copy of your letter with this reply, is being forwarded to your local board since there is no information contained therein which would indicate a basis for intervention by this Headquarters.

"You have been issued a lawful order to report for induction on May 21, 1969, and it is now incumbent upon you to obey that order."

scribed. Pace gave Major Armstrong a letter, dated May 15, 1969, at their meeting. In the letter, Pace chose to limit his presentation to the reasons why he had delayed filing for conscientious objector status until after issuance of the induction order. Pace does not now assert that he had any other evidence or information ready to submit to the State Director at that time.

Moreover, after receiving the induction order of April 17, 1969, Pace waited until May 5, 1969 to get his conscientious objector application into the hands of the local board. Thereafter, Pace met with Major Armstrong on May 16, 1969, only five days before he was to report for induction. In consequence, there was little time available for Pace to assemble evidence and information and to obtain action by the State Director and the local board on any additional issues which Pace may have wished to present. Insofar as Pace may have been hampered in making a more complete presentation to the State Director, we think it was a result of Pace's own delays and his choice of issues in first approaching the Director, not of misleading statements emanating from the office of the Director. We hold that Pace was not denied due process because of any such misleading statements.

Pace also contends that the State Director's exercise of discretion was "tainted by improper standard of law."

We find no merit in this argument. The contention is premised on the assumption that one of the grounds for the local board decision is that the board did not consider registrant's beliefs to be based upon "religious training and belief." The record does not sustain such an assumption.

As stated above, the local board gave two reasons for refusing to reopen Pace's classification. One was that the board believed that Pace's conscientious objector beliefs were not sincerely held. The other was because the board did not

specifically find that there had been a change in status resulting from circumstances over which Pace had no control. Nor does Major Armstrong's letter to Pace (see note 3), indicate that the State Director refused to reopen the classification because the local board had determined that Pace's conscientious objections were not based upon "religious training and belief."

Pace argues that 32 C.F.R. § 1625.3(a) is "facially unconstitutional" in that it fails to provide the State Director with any standards or guidelines to which he can refer in the exercise of his discretion.

This is a self-defeating argument since, if 32 C.F.R. § 1625.3(a) is invalid, there remains no basis in the statutes or regulations for action by the State Director in directing the local board to reconsider the classification. Moreover, insofar as we can determine, no such argument was advanced in the trial court.

These considerations aside, the most that the State Director can do under that regulation is to direct the local board to reconsider the classification. We think it fairly apparent that the purpose of investing the State Director with this power is to provide a means of obtaining consideration of the classification anew if the State Director or his representative has a reasonable doubt about the merits of the local board's classification or the procedures which the local board utilized. This implicit standard or guideline is enough having in view that, if the local board is called upon to reconsider the classification, it must apply the specific standards and guidelines provided by the Selective Service Act and applicable regulations with regard to classification of registrants.

Pace contends that his conviction must be reversed because the Government failed to provide him with a close physical inspection with clothing removed during his induction procedure.

The Army Regulation in question,[4] provides that inductees, such as Pace, who have previously been given a thorough medical examination will, on induction day, have their medical records reviewed, including a discussion of any intervening injuries and illnesses and, "with clothing removed . . . be closely observed by the examining physician to detect the presence of any communicable disease and apparent defects not previously recorded." *See* United States v. Brown, 438 F.2d 1115 (9th Cir. 1971); Briggs v. United States, 397 F. 2d 370 (9th Cir. 1968).

The Government does not dispute the assertion that Pace's medical inspection was incomplete because he was not observed with clothing removed. It argues, however, that such omission does not invalidate the induction proceedings unless prejudice results, and that, under the facts of this case, no prejudice resulted.

■ We agree that, in order to establish that incompleteness of the physical inspection invalidated the induction proceedings, the registrant must show that prejudice resulted. With regard to the sufficiency of the showing of prejudice, the rule is established in this circuit that if there is a significant possibility that the registrant would have been rejected as unfit, had he been afforded the kind of physical inspection prescribed by the above regulation, prejudice is indicated sufficient to invalidate the induction process. *See Brown, supra,* 438 F. 2d at 1117.

■ In an effort to show prejudice, Pace testified that he suffered frequent skin irritation resulting in red blotches often irritated to the point of bleeding. This testimony was corroborated by witness Susan Jacobs, who testified to observing this condition on numerous occasions. Pace also called the trial court's attention to the fact that Pace's "Report of Medical History,"[5] records the fact that Pace's father had asthma, hay fever and hives, and urged that this could have been a significant factor relative to Pace's skin condition.

However, the probative value of these items of evidence is undermined by the fact that, in his Medical History report, Pace answered "no" to the question: "Have you ever had or have you now— skin diseases?" In that report Pace also represented his health as being "excellent." Moreover he made no mention of a skin problem at the time of his physical inspection. Even at his trial, Pace did not testify that he had the alleged rash on the day of the physical inspection. It is highly unlikely that an inspection with clothing removed would have disclosed the alleged skin condition if he did not then have the rash complained of.

Nor was there any evidence that the claimed skin disorder, if it existed, could have amounted to a disqualifying defect. Pace testified that he had never considered the rash "anything to be too concerned with." He testified that it is a fairly annoying skin eruption, but added, "but I have just sort of learned to live with it." No such skin difficulty was discovered at the previous complete physical examination and Pace's own doctor did not indicate that he had discovered it. It seems highly unlikely that a medically disqualifying defect would have been overlooked by these doctors, and by Pace himself.

■ While the trial court did not make a special finding on this question of prejudice,[6] we think it is implicit in that court's general finding of guilty, that the failure to give Pace a close physical inspection with clothing re-

---

4. AR 601–270, Chap. 4, Section II, at 4–21 (1969).

5. A report prepared by Pace on a form supplied by the agency for use at the time of his physical inspection. *See* AR 601–270, Chap. 3, Section III, at 3–17 (2) (d) (1969).

6. No special findings were requested. *See* Rule 23(c), F.R.Crim.P. In the absence of such a request, the trial court was not required to enter special findings. Lofland v. United States, 357 F.2d 472, 477 (9th Cir. 1966).

moved did not result in substantial prejudice to him. *See* Lustiger v. United States, 386 F.2d 132, 135 (9th Cir. 1967). In our opinion, that implicit finding is not clearly erroneous.

Affirmed.