**UNITED STATES of America,**
**Plaintiff,**

v.

**Richard Michael BULGER, Defendant.**
**No. CR71–1039.**

United States District Court,
N. D. California.

March 2, 1972.

---

John F. Cooney, Jr., Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Lawrence K. Karlton and Marcus Vanderlaan, Sacramento, Cal., for defendant.

## MEMORANDUM DECISION

NICHOL, District Judge (Sitting by Assignment).

Richard Michael Bulger was tried before this Court for willfully and knowingly failing, neglecting and refusing to submit to induction into the Armed Forces of the United States in violation of the provisions of 50 U.S.C.A. App. Sec. 462. Upon the conclusion of the evidence and defendant's motion for judgment of acquittal, this Court took the case under advisement. This decision is rendered in compliance with the provisions of Rule 23(c) of the Federal Rules of Criminal Procedure.

Bulger registered with his local board in 1963 at the age of 18. He was classified II–S until August 5, 1969, when he was reclassified I–A.[1] He filed a timely appeal.

On October 8, 1969, the registrant submitted to a pre-induction physical examination. During the examination he was advised to send to the local board additional information from his private physician relating to his alleged knee condition. Following the examination and a routine check of defendant's civil offenses, the registrant was found acceptable for induction on November 24, 1969. There is nothing in the file to indicate that the defendant-registrant was given an opportunity to complete a security questionnaire (form DD–98), at his pre-induction physical.

Two letters concerning defendant's medical history relating to his knees, which had been sent to the local board, were reviewed and considered by the Armed Forces examining and entrance station personnel (hereinafter referred to as AFEES). AFEES recommended no change in defendant's classification, and he was so notified on January 29, 1970.

On February 26, 1970, the defendant was notified that since he had not withdrawn his earlier request for an appeal in writing, as he had indicated he would do, the local board was scheduling another date for his personal appearance. The registrant responded to this notice

---

1. In the local board minutes section of defendant's classification questionnaire between entries on July 20, 1966, and January 10, 1967, there appears an undated entry. That entry shows that by a vote of 3 to 0 the local board reclassified defendant I–A. The government by interrogatory admits that entry to be in error. The only material in the file possibly relating to such an entry is a notice sent to the registrant on December 22, 1967, advising him that he had not yet made a request for an undergraduate student deferment for that school term. Such a request was filed by defendant on January 2, 1968. There is also an undated letter with a receipt date of February 23, 1968, from the University of California at Berkeley stating that the defendant-registrant was no longer an enrolled student.

with a letter[2] stating why he was appealing. In the letter Bulger related the history of his alleged knee injuries and his subjective complaints. At the personal appearance the local board granted the defendant one month's time to substantiate his claim with medical evidence. On July 14, 1970, the local board voted 5 to 0 not to reopen or reclassify the registrant. At that meeting the local board reviewed the entire selective service file of defendant and noted that the registrant had not submitted any new medical proof of his claims.[3] On September 24, 1970, the State Appeal Board voted 4 to 0 to retain the registrant in the I–A class.

On November 18, 1970, defendant was ordered to report for induction on December 1, 1970. This order was returned to the local board with a request for a conscientious objector form. Bulger was subsequently ordered to report for induction on January 12, 1971, and again on February 24, 1971. His induction order was postponed upon receipt of his application for classification as a conscientious objector on February 22, 1971. With his application the registrant attached a letter, prepared by his attorney, stating that the induction notice had crystallized his conscientious objector beliefs and that defendant intended to refuse induction.

On March 9, 1971, the local board reviewed the conscientious objector claim of defendant and refused to reopen. The registrant was notified his new induction date was March 10, 1971. Bulger was found acceptable, but refused induction on March 31, 1971, after receiving a thorough physical examination

and orthopedic consultation regarding his alleged knee problem.[4] The selective service file indicates that the registrant was given the opportunity and did fill out a form DD–98 (security questionnaire) on March 31, 1971, before refusing induction.

### PRESUMPTION OF REGULARITY

Defendant's first contention is that the presumption of regularity, which makes the registrant's selective service file admissible, does not attach in this case since the presumption has been rebutted. Defendant submits the following alleged irregularities as sufficient to rebut the presumption: (1) The government admits the local board minute entry classifying the defendant I–A between the entries on July 20, 1966, and January 10, 1967, is apparently erroneous; (2) Defendant claims by a letter to the local board and his testimony at trial that he was not given a second mental test as indicated in his file; (3) No form DD–98 (security questionnaire) appears in defendant's file prior to the issuance of form DD–62 (statement of acceptability) on November 24, 1969; and (4) Dr. Harris' testimony indicates that the registrant was not given a high quality medical examination by AFEES.

The law in the Ninth Circuit is that a registrant's selective service file is admissible against the registrant in a criminal prosecution for failure to submit to induction. United States v. Lloyd, 431 F.2d 160, 163–164 (9th Cir. 1970), cert. denied, 403 U.S. 911, 91 S. Ct. 2210, 29 L.Ed.2d 688 (1971). A presumption of regularity goes with the file that can be rebutted only by direct evi-

---

2. This letter was not forwarded to AFEES for review.

3. Defendant testified that one of his doctors refused to send a letter stating defendant's medical condition to the local board.

4. According to Bulger's version of the examination as contained in a letter to the local board and his testimony (received over objection) at trial, the examination was not medically ideal. Defendant claims, for instance, that he was not given a new mental test and that only a cursory examination of his knees was conducted with slight mention of the history of defendant's injuries. The Court also received subject to objection the testimony of one Dr. Harris, who testified that based upon his examination of defendant and defendant's medical history as related by defendant, that defendant was not given a "high quality" examination by AFEES.

dence showing it to be irregular. United States v. Baker, 416 F.2d 202, 205 (9th Cir. 1969). Not every irregularity in the file will rebut the presumption. Some showing must be made that the defendant's rights were affected by the alleged irregularity. United States v. Neckels, 451 F.2d 709, 712 (9th Cir. 1971); United States v. Chaudron, 425 F.2d 605, 610–611 (8th Cir. 1970), cert. denied, 400 U.S. 852, 91 S.Ct. 93, 27 L.Ed.2d 89. The only irregularity actually shown here was the erroneous entry in the minutes of the local board showing the defendant to have been classified I–A between the entries on July 20, 1966, and January 10, 1967. This entry has not been shown to have affected defendant's rights in any manner. In addition, this Court holds that to rebut the presumption of regularity of the entire selective service file there must be evidence showing that more than one clerical error was made.[5]

■ As to defendant's claim that he was not given a second mental test, this Court does not believe that defendant's own self-serving statements are sufficient to rebut the presumption of regularity. The selective service file indicates at two separate pages (SS file at 67 & 69) that such a mental test was conducted.

The remaining points are also not sufficient and will be discussed below.

### INTENT

Defendant's next contention is that this is a crime requiring a specific intent as opposed to a general intent. He therefore argues that mistake of law should be a defense. It is his theory that the government must show that he acted with a bad purpose as opposed to the doing of a volitional act.

At trial, testimony by defendant's attorney prior to this trial was received subject to objection. His testimony was that he advised the defendant that the

decision of Ehlert v. United States, 422 F.2d 332 (9th Cir. 1970), affm'd 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), in the Ninth Circuit Court of Appeals would be reversed by the Supreme Court of the United States. Thus, defendant's attorney, acting as the ex-officio Supreme Court, determined that Bulger's late-filed conscientious objector claim required the local board to reopen the registrant's classification and grant him a I–O classification. History, as so often happens, proved his attorney to be wrong. See Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), decided April 21, 1971.

■ Such advice is no defense. Refusal to submit to induction is not a crime requiring a specific intent. United States v. Wood, 446 F.2d 505 (9th Cir. 1971). This same defense was raised in the *Wood* case upon the same grounds and was rejected. We are bound by the *Wood* decision.

■ Bulger was told of his legal obligation and the consequences of his refusal to submit, and yet he repeatedly refused to submit. At trial he admitted he was in control of his faculties and that he intended not to submit to induction. This is sufficient to show the necessary intent. United States v. Day, 442 F.2d 1034 (9th Cir. 1971).

### VALIDITY OF THE ORDER TO REPORT

■ Bulger's selective service file does not contain a form DD–98 (security questionnaire) completed by the registrant prior to the issuance of the form DD–62 (statement of acceptability). The file indicates that Bulger did not complete a DD–98 form until his second physical examination at the induction center. It is defendant's contention that under existing Army and Selective Service Regulations the statement of acceptability is invalid. Thus he contends the

5. Note that in United States v. Baker, 416 F.2d 202, 205 (9th Cir. 1969), the presumption of regularity as to the order ■ of call was rebutted, but not the presumption of regularity as to the entire selective service file.

order to report for induction, which is based on the statement of acceptability, is invalid.

At all times pertinent hereto, 50 U.S.C.A. App. Sec. 454(a) read in part:

No person *shall be inducted* into the Armed Forces for training and service . . . *until his acceptability in all respects*, including his physical and mental fitness, has been satisfactorily determined under standards prescribed by the Secretary of Defense. . . . (emphasis added)

32 C.F.R. Secs. 1628.10 & 1631.7 require that each registrant be given a physical examination and be found acceptable before he is ordered to report for induction. Army Regulation 601–270, ch. 5, Sec. II, pars. 5–2 and 5–6, state that the form DD–98 (security questionnaire) is to be processed at the time of pre-induction examination. In addition the regulations state that the DD–98 form may be completed at any time during processing and that any registrant who qualifies the form will not be inducted before an investigation is made.

From a reading of these statutes and regulations, the Court cannot conclude that the processing of a form DD–98 (security questionnaire) at the pre-induction physical, before issuing a form DD–62 (statement of acceptability), is mandatory. The Army Regulations cited above seem somewhat inconsistent. A fair reading of them, however, shows that the army, while stating that the pre-induction physical examination is the best time to process the DD–98 (security questionnaire), realizes that the form need be completed only before induction. In this light it is important to note that 50 U.S.C.A. App. Sec. 454 says "no person shall be inducted" and not that no person shall be ordered to report for induction. This Court concludes that the DD–98 (security questionnaire) need only be executed prior to induction. Oshatz v. United States, 404 F.2d 9, 11–12 (9th Cir. 1968), is authority for this finding. Oshatz had never been given the opportunity to execute a DD–98. The court, therefore, held that he was

prejudiced since he was not given that opportunity prior to induction. Here Bulger actually executed the DD–98 form before he was asked to submit to induction. At that time he was again found acceptable and has, therefore, not been prejudiced.

It is defendant's contention that should the Court decide that the DD–98 (security questionnaire) must be executed before the DD–62 (statement of acceptability) is issued, then defendant was prejudiced because the local board would have had to reopen his classification and consider his conscientious objector claim filed after the then void order to report. This theory is precluded by Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), in that Bulger could have pressed his conscientious objector claim after he was inducted. The substantial prejudice required by United States v. Pace, 454 F.2d 351 (9th Cir., 1972) is not present here.

## MEDICAL EXAMINATION

 It is defendant's contention that he was not given a "high quality" medical examination as required by Army Regulation 601–270, Ch. 4, Sec. II, par. 4–16(3) (b). Defendant's physician was allowed to testify, subject to objection, that defendant did not meet the army's own standards for induction. Army Regulation 40–501, Ch. 2, Sec. VII, par. 2–9. The doctor's testimony was that based on his own examination of defendant and the medical history related to him by defendant, Bulger did not meet the army's standards. His theory then is that the army could not have given him a "high quality" examination and still have found him acceptable.

This contention is unacceptable. The file indicates that the AFEES physicians had substantially the same information available to them as did defendant's private physician and that AFEES followed its usual practice and procedure with respect to the examination of defendant. There is a basis-in-fact in the

file to substantiate the denial of defendant's physical hardship claim. United States v. Lloyd, 431 F.2d 160, 166 (9th Cir. 1970), cert. denied, 403 U.S. 911, 91 S.Ct. 2210, 29 L.Ed.2d 688 (1971). There is no unusual circumstance present here requiring this Court to inquire into the registrant's physical fitness. Therefore, the testimony of defendant's physician is irrelevant. United States v. Sowul, 447 F.2d 1103, 1105 (9th Cir. 1971). Bulger's remedy was to seek further in-service medical attention after induction and not to refuse to submit to induction. United States v. Shunk, 438 F.2d 1204 (9th Cir. 1971).

## LOCAL BOARD'S EXERCISE OF DISCRETION

Defendant's argument that the local board failed to exercise its discretion under 32 C.F.R. Sec. 1622.1(c) in reviewing the two letters sent to it by defendant's physicians is precluded by the record. The selective service file indicates that the local board on July 14, 1970, reviewed and considered defendant's entire file including his letter submitted on March 9, 1970, but refused to reopen.

 The local board did not abuse its discretion under 32 C.F.R. Sec. 1628.13(a) (3) in not sending defendant's March 9, 1970, letter to AFEES since that letter contained no new information that had not already been considered by AFEES.[6] United States v. Miller, 455 F.2d 358 (9th Cir., 1972); United States v. Butterfield, Cr. No. 71-240 (D.C.Ore., filed Dec. 23, 1971).

## REASONS FOR DENIAL OF IV-F CLAIM

Neither the local board nor the state appeal board stated any reasons for their denial of defendant's IV-F claim made in his letter of March 9, 1970. It is defendant's contention that Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971), requires the local board and the state appeal board to state in writing their reasons for denying a lower priority classification to a registrant. All that the *Clay* decision holds is that since no reasons for denial of a conscientious objector claim were given, the denial can be upheld only if all three possible reasons are legally sufficient for denial. United States v. Marcovich, Cr. No. 71-1974, 454 F.2d 138 (9th Cir., 1972). No other reading is possible in view of Fein v. Selective Service System Local Board No. 7, Yonkers, New York, 430 F.2d 376 (7th Cir. 1970), cert. granted, 401 U.S. 953, 91 S.Ct. 975, 28 L.Ed.2d 236 (1971), which is presently before the Supreme Court to decide whether or not an appeal board must state its reasons for overruling a local board's I-O classification.

 This Court is bound by United States v. Preston, 445 F.2d 808 (9th Cir. 1971), which held that the local board need not state their reasons for refusing to reopen where the registrant has not presented a prima facie case for reopening.[7] Since Bulger did not present a prima facie case for his IV-F claim, the board was not required to state its reasons for refusing to reopen.

Having considered all of defendant's contentions and found them without merit, the Court finds the defendant, Richard Michael Bulger, guilty of the crime charged.

 Upon finding the defendant guilty, this Court is delaying execution of its mandate for a period of thirty days to give the defendant the option to

---

6. Defendant's real claim here is that his letter presented a more detailed history of how his injuries occurred and what his subjective complaints were. He then argues that these allegedly new facts present a prima facie claim for a deferment based on physical fitness.

7. Note that in United States v. Marcovich, Cr. No. 71-1974, 454 F.2d 138 (9th Cir., 1972), the registrant had presented a prima facie case and yet the court held that no express reason for denial need be stated where "the reason for a board's action 'can be determined from the agency record with reasonable certainty.'" *Id.* at 142. The record does not indicate that Bulger had met the standards for a IV-F classification.

voluntarily submit to induction, thereby providing an avenue by which he may present his claim of conscientious objection to war. Post-induction consideration of such a claim in military channels is the appropriate procedure prescribed by Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971). See, United States v. Larson, 455 F.2d 187 (8th Cir., 1972).