UNITED STATES of America, Plaintiff-Appellee,

v.

Josiah L. MERRILL, III, Defendant-Appellant.

No. 83–1013.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 14, 1983.

Decided June 5, 1984.

As Amended on Denial of Rehearing and Rehearing En Banc Oct. 5, 1984.

Certiorari Denied Jan. 14, 1985.
See 105 S.Ct. 926.

Sherry P. Herrgott, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Josiah L. Merrill, III, pro se, c/o David J. Itzkowitz, Phoenix, Ariz., for defendant-appellant.

Before WALLACE and SKOPIL, Circuit Judges, and KENYON,* District Judge.

WALLACE, Circuit Judge:

Merrill, who has defended himself, appeals his convictions for mailing injurious articles, threatening the life of the President, and mailing obscene materials in violation of 18 U.S.C. §§ 1716, 871, and 1461. Merrill argues that the evidence is insufficient to support his convictions and that the district court abused its discretion by not allowing him to present his defense. We affirm.

I

Merrill is a 39-year-old former Captain in the United States Air Force. He served two tours of duty in Vietnam as a jet fighter pilot. Beginning in 1974, Merrill grew increasingly disillusioned about America's leadership and its military bureaucracy. In 1975, he left active duty and began work on what he describes as a book entitled "In Defense of Reason, The War on Stupidity." Apparently attempting to gain publicity for his cause, Merrill began what he viewed as a military operation against the political and military establishment. Although the precise aims of what Merrill calls "The Military Abscam Watergate Operation" are unclear, the implementation of his plan involved mailing bizarre materials to community leaders in Phoenix, Arizona. These materials consisted primarily of collages of photocopied newspaper articles and pictures annotated by Merrill with various written messages through which Merrill attempted to express his views on society's problems. Many of the letters he mailed contained live .22 caliber rim fire bullets. Several of the letters included macabre and bloody depictions of President Reagan along with the words "Kill Reagan." Two of the communications were illustrated with photocopies of pornographic playing cards.

In October 1981, Merrill was arrested by a Secret Service agent and a Postal Inspector after several of his letters were referred to them for investigation. Merrill admitted mailing the materials and told the investigators that he intended to force the government to bring him to trial, where he would have a public forum for his complaints against it. An eleven-count indictment charged Merrill with four counts of threatening the life of the President in violation of 18 U.S.C. § 871, five counts of mailing injurious articles in violation of 18 U.S.C. § 1716, and two counts of mailing obscene materials in violation of 18 U.S.C. § 1461. Following two psychological evaluations, the district court determined that Merrill understood the nature of the proceedings against him, was able to assist counsel, and was thus competent to stand trial. The district court subsequently allowed Merrill's attorney to withdraw as attorney of record and appointed him as

* Honorable David V. Kenyon, United States District Judge, Central District of California, sitting by designation.

advisory counsel to assist Merrill in his pro se defense. Merrill waived trial by jury.

Merrill was convicted on all eleven counts. He was sentenced to concurrent three year prison terms for each of his convictions of mailing injurious articles and threatening the life of the President, and to a consecutive term of five years probation for his convictions of mailing obscene material. We have jurisdiction over Merrill's timely filed appeal pursuant to 28 U.S.C. § 1291.

## II

Merrill's appellate briefs continue his rambling attacks on the federal government, the military, and the various members of the justice department and judiciary involved in his case. Although it is difficult to identify the precise contentions Merrill makes on appeal, we will attempt to respond to the legal arguments that are raised, either explicitly or implicitly, by his lengthy briefs. Merrill's major attack is that the evidence admitted at trial was insufficient to support his convictions.

In reviewing the sufficiency of the evidence underlying a conviction on appeal, we view the evidence and all inferences reasonably drawn therefrom in the light most favorable to the government. We will affirm the conviction if any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Ramirez*, 710 F.2d 535, 545 (9th Cir.1983). We accept the factual findings of the district judge unless we conclude that they are clearly erroneous. *United States v. Pace*, 454 F.2d 351, 356–57 (9th Cir.1972); *see also United States v. Thoreen*, 653 F.2d 1332, 1342–43 (9th Cir. 1981); *United States v. Baker*, 641 F.2d 1311, 1317 (9th Cir.1981).

### A.

Counts five through nine of the indictment charge Merrill with violating 18 U.S.C. § 1716 by knowingly mailing letters containing live .22 caliber bullets. In a pretrial stipulation, Merrill admitted having written and mailed the letters that were the subjects of these counts. He further stipulated that he had enclosed a .22 caliber bullet in each of the letters. At trial, the government presented the testimony of a Secret Service firearms expert about the nature of the bullets. He testified that because of their "rim fire" design, .22 caliber bullets may be detonated by striking any part of the metal flange encircling the end of a .22 caliber cartridge. The danger posed by mailing the bullets was corroborated by the testimony of a Postal Service employee who described the mechanical canceling machines used to process the letters Merrill mailed. He concluded that the machines could easily have detonated the mailed bullets.

Merrill presented no contradictory evidence. He merely suggested during his cross-examination of one of the government's witnesses that .22 caliber bullets are not powerful enough to present any real danger.

On the basis of this evidence, we conclude that the district judge was not clearly erroneous in making the necessary factual findings which demonstrated beyond a reasonable doubt that Merrill violated 18 U.S.C. § 1716. We therefore affirm his convictions on counts five through nine.

### B.

We turn now to Merrill's convictions on counts one through four of the indictment for threatening the life of the President in violation of 18 U.S.C. § 871. The letters that are the subjects of these counts all include depictions of President Reagan's head impaled on a stake and dripping blood. They also include the words "Kill Reagan." One of the letters has a .22 caliber bullet taped to it and pointing at a picture of President Reagan's head. The letters were addressed to two judges, a newspaper, and a church leader in the Phoenix area. The return addressees indicated on the envelopes were various community leaders.

As was the case in counts five through nine, Merrill does not contest most of the elements involved in the charge of threatening the President's life. Before trial, Merrill stipulated that he wrote the letters, that he mailed them, and that the return addressees on the letters neither knew of nor authorized them. Notwithstanding these factual concessions, Merrill's briefs raise two legal challenges to his convictions.

First, Merrill asserts that the statements and pictures contained in the letters are political expressions protected by the first amendment. Cases interpreting 18 U.S.C. § 871, however, have uniformly concluded that "true" threats, of the type proscribed by the statute, are not constitutionally protected speech. *E.g., Watts v. United States,* 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969) (per curiam) ("What is a threat must be distinguished from what is constitutionally protected speech."); *United States v. Howell,* 719 F.2d 1258, 1260–61 & n. 2 (5th Cir.1983) (analogizing threats to other nonprotected speech such as obscenity and fighting words). The Supreme Court specifically rejected the suggestion that section 871, although it criminalizes a form of pure speech, is facially invalid. The Court stated "[c]ertainly the statute under which petitioner was convicted is constitutional on its face. The Nation undoubtedly has a valid, even an overwhelming, interest in protecting the safety of its Chief Executive and in allowing him to perform his duties without interference from threats of physical violence." *Watts v. United States,* 394 U.S. at 707, 89 S.Ct. at 1401.

These authoritative determinations that the statute is not unconstitutional on its face limit our inquiry to whether the letters mailed by Merrill constitute a "threat" for purposes of section 871. This determination is directly linked to Merrill's second challenge to these convictions: that the letters were not true threats because he never intended actually to carry them out.

In *Roy v. United States,* 416 F.2d 874, 877–78 (9th Cir.1969), we interpreted section 871's intent requirement:

[T]o require only that the defendant intentionally make a statement, written or oral, in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of the President, and that the statement not be the result of mistake, duress, or coercion.

Other circuits have generally also concluded that section 871 establishes an objective test. *See United States v. Callahan,* 702 F.2d 964, 965–66 (11th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983); *United States v. Vincent,* 681 F.2d 462, 464 (6th Cir.1982); *United States v. Carrier,* 672 F.2d 300, 306 (2d Cir.), *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2927, 73 L.Ed.2d 1359 (1982); *United States v. Frederickson,* 601 F.2d 1358, 1363 (8th Cir.), *cert. denied,* 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979); *United States v. Hall,* 493 F.2d 904, 905 (5th Cir.1974), *cert. denied,* 422 U.S. 1044, 95 S.Ct. 2661, 45 L.Ed.2d 696 (1975); *United States v. Hart,* 457 F.2d 1087, 1090–91 (10th Cir.), *cert. denied,* 409 U.S. 861, 93 S.Ct. 150, 34 L.Ed.2d 108 (1972). *But see United States v. Patillo,* 438 F.2d 13, 16 (4th Cir.1971) (en banc). Under section 871, the threat itself is the crime. *Roy v. United States,* 416 F.2d at 877. We have therefore upheld the section 871 conviction of a defendant who had no apparent capacity to carry out the threat. *See United States v. Melendy,* 438 F.2d 531, 532 (9th Cir.1971) (incarcerated defendant).

■ Whether any given form of written or oral expression constitutes a true threat for the statute's purposes is a question for the trier of fact under all of the circumstances. *Roy v. United States,* 416 F.2d at 877–78. A few cases may be so clear that they can be resolved as a matter of law, *e.g., Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (condi-

tional statement made at political rally which provoked listeners' laughter was merely "political hyperbole," and question should not have gone to jury), but most cases arising under this statute present widely varying fact patterns that should be left to the trier of fact. *United States v. Carrier*, 672 F.2d at 306. The district judge was not clearly erroneous in finding that the letters mailed by Merrill constituted an objectively serious threat to harm the President. We therefore affirm Merrill's conviction for violating 18 U.S.C. § 871.

## C.

Merrill was convicted under counts ten and eleven of the indictment for mailing obscene materials in violation of 18 U.S.C. § 1461. The letters dealt with under these counts are identical and consist of collages of photocopied newspaper articles, cut-out pictures of President Reagan, Menachim Begin, and other public figures, and his added comments. The first and second pages of both of these three-page letters feature a photocopied playing card illustrated with a pornographic picture. Both pictures depict adults engaged in oral sex; the first involves two females and the second involves a male and a female. Both letters were mailed to state court judges in Phoenix.

Merrill stipulated that he wrote and mailed both letters, but argues that they are not obscene. The Supreme Court established the controlling test for obscenity in *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). The three-pronged *Miller* test inquires:

(a) Whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest ...;

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* (citations omitted). Although *Miller* involved a prosecution under a state statute, subsequent Supreme Court decisions have held the *Miller* test applicable to federal legislation, including 18 U.S.C. § 1461. *Hamling v. United States*, 418 U.S. 87, 105, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590 (1974); *United States v. 12 200-Ft. Reels of Super 8 MM. Film*, 413 U.S. 123, 130, 93 S.Ct. 2665, 2670, 37 L.Ed.2d 500 (1973). The government bears the burden of proving obscenity to the fact-trier's satisfaction. *United States v. 2,200 Paper Back Books*, 565 F.2d 566, 570 (9th Cir.1977).

The first prong of *Miller* essentially involves a factual determination subject to limited appellate review. *See Smith v. United States*, 431 U.S. 291, 300–01, 305–06, 97 S.Ct. 1756, 1763–64, 1766, 52 L.Ed.2d 324 (1977) (suggesting that the appellate court review only for sufficiency of evidence). The patently offensive test under the second prong is also a factual determination constrained by only slightly broader appellate review. *See id.* at 301, 97 S.Ct. at 1764 ("The kinds of conduct that a jury would be permitted to label as 'patently offensive' in a § 1461 prosecution are the 'hard core' types of conduct ...."). *See also Jenkins v. Georgia*, 418 U.S. 153, 161, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642 (1974). Nevertheless,

although under *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the questions of what appeals to "prurient interest" and what is "patently offensive" under the community standard obscenity test are "essentially questions of fact," *id.* at 30, we expressly recognized the "ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary," *id.* at 25, 93 S.Ct. at 2615.

*Bose Corp. v. Consumers Union of United States, Inc.*, —— U.S. ——, 104 S.Ct. 1949, 1963, 80 L.Ed.2d 502 (1984) (*Bose*) (footnote omitted). Review of *Miller*'s third prong, unlike the first two, appears to call for greater scrutiny. The Supreme Court has stated that whether a work lacks serious literary, artistic, political, or scien-

tific value is a "determination ... particularly amenable to appellate review." *Smith v. United States*, 431 U.S. at 305, 97 S.Ct. at 1766.

In the case before us, the evidence the government introduced to show obscenity was the letters themselves and the testimony of two secretaries who opened them. Both secretaries stated that they found the letters "shocking and offensive." The government presented no evidence regarding contemporary community standards in the Phoenix area. Nor did it attempt to prove that the letters, taken as a whole, lacked serious literary, artistic, political, or scientific value.

■ Under the first prong, although evidence regarding contemporary community standards is admissible, it is not necessary. The trier of fact is assumed to be inherently familiar with and capable of applying those views. *Hamling v. United States*, 418 U.S. at 104–05, 94 S.Ct. at 2900–01; *United States v. 2,200 Paper Back Books*, 565 F.2d at 570. Applying our reviewing responsibility as mandated by *Bose* and *Smith*, we will not overturn the district court's determination.

■ With regard to *Miller*'s second prong, we conclude that the pictures contained in Merrill's letters do fall within the realm of "hard core" pornography that a trier of fact may find patently offensive. *See Miller*, 413 U.S. at 25, 93 S.Ct. at 2615. The district judge, on the evidence before him, could have determined properly that the material met the patently offensive test. Once more applying the *Bose-Smith* standard of review, we do not disturb that finding.

■ As we observed, however, we review findings under *Miller*'s third prong more extensively. No evidence in the record suggests Merrill's letters lack political value. Indeed, the letters themselves suggest the opposite. Most of the material in them is plainly political. The letters seem to be an attempt to communicate Merrill's sincerely held, albeit bizarre, political views.

But this case differs, on reflection, from those in which the challenged aspect of the work is a fully integrated part of the whole. The playing cards depicting oral sex are merely pasted onto the rest of the collages. They have no part in the theme and are not part of the message.

The case before us is not dissimilar to the "sham" exception to the taken-as-a-whole prong of the *Miller* test described by the Fifth Circuit in *Penthouse International, Ltd. v. McAuliffe*, 610 F.2d 1353 (5th Cir.1980).

> The only exception occurs when there is a sham attempt to insulate obscene material with non-obscene material.... This would occur, for example, if the most obscene items conceivable were inserted between each of the books of the Bible.

*Id.* at 1368 (citations and footnote omitted). *See Flying Eagle Publications, Inc. v. United States*, 285 F.2d 307, 308 (1st Cir. 1961) ("An obscene picture of a Roman orgy would be no less so because accompanied by an account of a Sunday school picnic which omitted the offensive details."). Thus, attaching the political letter with the obscene pictures, as done in this case, does not save the mailing as a whole.

The attached non-integrated pornographic playing cards properly could be found to make the whole letter a sham political statement. We conclude that we cannot reverse the district court.

### III

Besides challenging the sufficiency of the evidence supporting his convictions, Merrill claims that the trial court erred by not allowing him to present a worthwhile defense. Specifically, he challenges the district judge's actions in refusing to order the production of certain government documents, to subpoena witnesses identified by Merrill, and to admit certain evidence. A careful review of the record satisfies us that the challenged actions do not constitute reversible error.

Before the trial, the district judge denied Merrill's request for the production of all

CIA, FBI, military intelligence, Justice Department, and Secret Service documents concerning him. The district judge ruled that the requested documents were irrelevant to any issue in the case. He also explained to Merrill that some of the government's records—those relating to his psychological condition—might be relevant to the case if Merrill presented a defense based on mental incompetency. The judge then gave Merrill a copy of the appropriate local rule for giving notice of intent to rely on mental incompetency as a defense and explained to him that he could file the notice and renew his motion for production of the psychiatric records. He did not do so.

 We may not disturb a district court's discovery rulings in a criminal case unless there has been an abuse of discretion. *United States v. Balk*, 706 F.2d 1056, 1060 (9th Cir.1983). We find no abuse of discretion in the district judge's refusal to grant Merrill's sweeping request for the production of government documents.

██ The district judge also denied Merrill's request that twenty-six witnesses be subpoenaed at government expense under rule 17(b) of the Federal Rules of Criminal Procedure. We have held that a rule 17(b) motion is addressed to the sound discretion of the trial court and may be refused if untimely or if the defendant fails to allege the witnesses' testimony which, if true, would be relevant to any issue of the case. *United States v. Sims*, 637 F.2d 625, 629 (9th Cir.1980). Merrill failed to request the issuance of the subpoenas until the day before his trial. When asked what testimony he hoped to elicit from the listed witnesses, Merrill admitted that he had not spoken to most of them and was unsure of what their testimony would be. Merrill also could not supply the addresses for many of the witnesses. The district judge concluded that Merrill's rule 17(b) request was untimely and that he had failed to show that the testimony of the requested witnesses would be relevant to his case.

The district judge did not abuse his discretion in reaching this conclusion.

 Merrill also challenges the restrictions the district judge imposed on his efforts to present evidence concerning his defense. A district court's decision to admit or exclude evidence will be upheld on appeal unless the court abused its discretion. *United States v. Long*, 706 F.2d 1044, 1053 (9th Cir.1983). We find no indication in the record that the district judge abused his discretion in limiting Merrill's attempts to present what Merrill describes as his "Military Abscam Watergate Sting" defense. To the contrary, the district judge clearly demonstrated a great deal of patience with Merrill's pro se representation and bizarre legal theories. The district judge allowed Merrill to take the stand and explain at length the theory of his defense, even though the testimony had no legal bearing on the charges against him.

 A pro se defendant is subject to the same rules of procedure and evidence as defendants who are represented by counsel. *See Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975); *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981). The district judge was extremely solicitous in handling Merrill's trial, and appointed advisory counsel to assist Merrill in the conduct of his pro se defense. On repeated occasions, the judge raised objections to evidence offered by the prosecution. Similarly, more than once during the trial, the judge excluded government counsel from the courtroom and provided Merrill with sound legal advice. The district judge made every reasonable effort to protect Merrill's right to a fair trial as well as his right to represent himself.

AFFIRMED.