486 So.2d 569 (1986)
CITY OF MIAMI, Petitioner,
v.
FLORIDA LITERARY DISTRIBUTING CORPORATION, et al., Respondents.
No. 66573.
Supreme Court of Florida.
April 3, 1986.
*570 Lucia A. Dougherty, City Atty. and Gisela Cardonne, Deputy City Atty. and Leon M. Firtel, Asst. City Atty., Miami, for petitioner.
Joel Hirschhorn, Miami, and Harry M. Solomon, Miami, for respondents.
EHRLICH, Justice.
This case is before us for review of a decision by the Third District, Florida Literary Distributing Corp. v. State ex rel. Garcia-Pedrosa, 460 So.2d 1028 (Fla. 3d DCA 1985). The opinion below requires expert testimony regarding contemporary community standards in obscenity cases, and is in direct and express conflict with Collins v. State Beverage Department, 239 So.2d 613 (Fla. 1st DCA 1970), and Mitchum v. State, 251 So.2d 298 (Fla. 1st DCA 1971). As discussed infra, we have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The City of Miami sought injunctive relief to stop distribution of a total of eight magazines. At the circuit court level, the city proceeded against four magazines each in two separate actions. Florida Literary Distributing Corp. ("Florida Literary") moved for directed verdicts after the city presented its case in both hearings, arguing that the city had not presented expert testimony to establish the community standards of Dade County. The circuit court judges issued permanent injunctions in both cases. The district court of appeal reversed the lower courts in a consolidated opinion, holding that testimony defining contemporary community standards of obscenity was required when the party defendant has no right to a jury trial. We disagree with the district court and quash the decision.
The question before us is not whether the eight magazines are obscene, but whether the trial judge, acting as a finder of fact in a proceeding where the defendant has no right to a jury trial, must be apprised of contemporary community standards by evidence presented by the governmental entity seeking to establish obscenity. To understand the issues clearly, we must look to the current first amendment doctrine vis-a-vis regulation of obscenity. That doctrine is grounded in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The first amendment will not protect obscene publications. To determine what is obscene, the trier of fact must decide
(a) whether "the average person, applying contemporary community standards," would find that the work, taken as a whole, appeals to the prurient interest;
(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law;
(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.
413 U.S. at 24, 93 S.Ct. at 2615 (citations deleted). The problem before us arises from the first of the three Miller elements regarding contemporary community standards. A trier of fact must determine that a work appeals to prurient interests, but an objective standard is utilized, i.e., an average person applying contemporary community standards. Thus, a trier of fact cannot rely on his own standard of prurient interest, but rather must look to the average person in the community.
There can be no doubt that when a jury is asked to apply the Miller test, the jury is deemed competent to determine what the contemporary community standards are and how an average person would apply them. There is no constitutional requirement that evidence of the contemporary community standards be placed in the record. This was the holding in Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), decided the same day as Miller.

*571 Nor was it error to fail to require "expert" affirmative evidence that the materials were obscene when the materials themselves were actually placed in evidence. The films, obviously, are the best evidence of what they represent.[6] "In the cases in which this Court has decided obscenity questions since Roth [v. United States, 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498] (1957)], it has regarded the materials as sufficient in themselves for the determination of the question."
[6] This is not a subject that lends itself to the traditional use of expert testimony. Such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. No such assistance is needed by jurors in obscenity cases; indeed the "expert witness" practices employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony. "Simply stated, hardcore pornography ... can and does speak for itself." We reserve judgment, however, on the extreme case, not presented here, where contested materials are directed at such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate to judge whether the material appeals to the prurient interest.
413 U.S. at 56, 93 S.Ct. at 2634 (citations deleted).
The argument of Florida Literary is best summed up in the opinion of the Fifth District in Golden Dolphin No. 2, Inc. v. State, Division of Alcoholic Beverages & Tobacco, 403 So.2d 1372 (Fla. 5th DCA 1981), wherein the court reviewed an administrative order finding a performance in a bar obscene and suspending the bar's liquor license for 45 days.
With regard to the question of whether there was substantial competent evidence to support the hearing officer's finding that the show was obscene, the Golden Dolphin contends on appeal, as it did at the hearing, that since there was no evidence submitted to the hearing officer as to the contemporary community standards of the area, there was insufficient evidence to support a finding that the dance was obscene. We agree.
... .
The decision as to what are the community standards must come from either the prior knowledge of the trier of fact or through knowledgeable witnesses. This decision usually arises in the context of a criminal trial where the defendant exercises his right to a jury trial. The jury is supposed to be a cross-section of the community and thus knowledgeable of the community standards. Therefore, independent testimony is not necessary to enable a jury to judge the obscenity of material which has been placed into evidence. Hamling v. United States, 418 U.S. 87 [94 S.Ct. 2887, 41 L.Ed.2d 590] (1974); Paris Adult Theatre I v. Slaton, 413 U.S. 49 [93 S.Ct. 2628, 37 L.Ed.2d 446] (1973). However, such independent testimony may be presented if a party so desires.
If a defendant waives his right to a jury and is tried by a judge, it is logically arguable that such defendant cannot complain that the judge is unrepresentative of the community. But if that judge affirmatively asserts his incapacity to discern community standards in the absence of evidence thereof, then it would be incumbent upon the state to present such evidence at trial.
In the case at hand, the proceeding was a civil administrative hearing and, therefore, there was no right to a jury trial. No opportunity for a jury trial was provided. Instead, the Golden Dolphin was tried by a hearing officer, and no evidence was presented on the subject of contemporary community standards. With the case in this posture, the Division failed to prove that the show was obscene.
403 So.2d at 1374 (citations deleted, emphasis added). The district court in the case sub judice relied on Golden Dolphin to require expert evidence of contemporary community standards in all cases where *572 there is no right to a jury trial. The reasoning of the Golden Dolphin court and the court below in this case is that a jury is a cross-section of the community, and is therefore aware of contemporary community standards. A defendant has the opportunity to question jurors about their knowledge of community standards in voir dire and can challenge those found wanting. A defendant who waives jury trial, the reasoning continues, cannot complain that a judge is unrepresentative of the community, but when there is no right to a jury trial a defendant has not waived his right to object to a judge's inability to ascertain contemporary community standards.
There is a certain logic to this argument in that a jury forms a consensus opinion of contemporary community standards, but that a lone judge has only his own standard to rely on. The flaw in this reasoning is the incorrect premise that the jury determines contemporary community standards by a consensus of the jurors' individual standards, while a judge applies his own individual standard. This simply is not the case. There is a legal fiction that there is an objective contemporary community standard, that a jury looks to that contemporary community standard, and that a judge is just as competent as six jurors to be on notice of that objective standard. While this may seem a questionable legal fiction, it is one mandated by the United States Supreme Court, and it is one which we must deal with. This tenuous but controlling rationale is expressed in United States v. Various Articles of Obscene Merchandise, Schedule No. 2102, 709 F.2d 132 (2d Cir.1983):
The parties may introduce relevant evidence of the prevailing community standard. But even if such evidence is adduced, the trier may nonetheless disregard it and rely exclusively on his own knowledge of the views of the average person in the community when making the required determination. Although appellate courts are required to exercise de novo review as to the preliminary substantive requirement that the material be "hardcore" pornographic in nature, the trier's finding that the material is non-obscene is virtually shielded from appellate scrutiny, at least absent evidence that it is so clearly unreasonable as to amount to abuse of discretion. The principal reason for this posture on appeal is that under Miller the trier of fact is at liberty to identify and apply community standards as he sees them, unchecked by any definition of the relevant community (except that it may not extend to the entire nation) or by any more precise benchmarks. To this must be added our tradition that it is for the trial judge or jury, not the appellate court, to find the facts, and the dubious assumption that the triers have their fingers on the pornographic pulse in the community, enabling them to determine whether specific material has crossed the line from being tolerated to being patently offensive.

Id. at 136 (citations deleted, emphasis added). See also United States v. Merrill, 746 F.2d 458 (9th Cir.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 926, 83 L.Ed.2d 938 (1985). "[A]lthough evidence regarding contemporary community standards is admissible, it is not necessary. The trier of fact is assumed to be inherently familiar with and capable of applying those views." 746 F.2d at 464 (bench trial  defendant waived trial by jury). Dubious though the assumption may be, it is one made by the highest court in this land, and we likewise can find no basis for distinguishing between the competence of a judge and a jury to ascertain the contemporary standards of the community wherein they sit. The Golden Dolphin court is correct that when a judge "affirmatively asserts his incapacity to discern community standards in the absence of evidence thereof, then it would be incumbent upon the state to present such evidence," 403 So.2d at 1374, but in that instance the judge has refuted the "dubious assumption." If anything, a defendant may be more protected when a judge is the trier of fact, since, presumably, a judge is aware of his duty to assert his incapacity if such is the case, whereas a *573 jury, absent an instruction on such an obligation (an instruction we doubt will ever be mandated), is presumably unaware of such an obligation.
The Golden Dolphin court is also correct in noting that independent testimony as to community standards is certainly admissible if either party so desires. "If the government does not present evidence ... it must be prepared to have the [trial judge acting as trier of fact] declare that, by [his] lights, the material is not self-evidently offensive to the community." United States v. Various Articles of Merchandise, Seizure No. 170, 750 F.2d 596 (7th Cir.1984).
Our holding is best summed up by Judge Sharp's dissent in Golden Dolphin:
The general rule that a trial judge, sitting as a trier of fact, and without hearing any testimony regarding contemporary community standards, may apply what he has determined to be the common conscience of the community has been the law in our sister courts for some time.
Absent a showing by the defense at trial that the judge trying the case is unaware of the community standards, I see no reason why the trial judge or hearing officer should not be able to make the obscenity determination by examining the challenged activity and applying his own knowledge of the community standards. Trial judges, like juries, are deemed competent to know community standards and apply them in other contexts. No different rule should be evolved for obscenity cases without express guidance from our two Supreme Courts.
403 So.2d at 1375 (footnotes deleted). There is no express guidance from the United States Supreme Court; we offer no different rule either.
Florida Literary consistently argues that we lack conflict jurisdiction in this case. Conflict with the decision below is based primarily on the similar case of Collins v. State Beverage Department, 239 So.2d 613 (Fla. 1st DCA 1970). Florida Literary argues in this case that the Miller decision requires expert testimony when a judge sits as a trier of fact because the Miller court's analysis of contemporary community standards is framed in terms of jury determination. Florida Literary urges that this emphasis on jury determination demonstrates that the Supreme Court endorses the argument that a jury is inherently more capable than a judge to determine contemporary community standards. Based on its view of the Miller decision, Florida Literary argues that the Collins decision, decided prior to Miller, is no longer valid precedent, since the Collins court's decision which does not require evidence as to obscenity was rendered obsolete by the Miller decision. As discussed supra, Miller cannot be read to make this distinction between jury and nonjury trial. Nor can Collins be distinguished on the ground that Collins does not require expert testimony regarding the ultimate conclusion as to prurient interest, whereas Golden Dolphin and the instant decision require testimony as to community standards to aid in reaching the ultimate conclusion regarding prurience. This is a distinction without a difference. Testimony as to whether material is prurient under contemporary community standards must inherently include a delineation of what those community standards are. Obscenity is a troublesome area of the law for the courts and any inexactitude in language in Collins must be attributed to the unsettled nature of the law rather than a studied choice of words on which a distinction may be made. Quite simply, the question is whether or not expert testimony is required to support a conclusion of prurience under contemporary community standards; Collins said no, Golden Dolphin and the instant case said yes. There is conflict.
Accordingly, the decision of the district court is quashed and the case remanded for further proceedings consistent with this opinion.
It is so ordered.
ADKINS, OVERTON and McDONALD, JJ., concur.
BOYD, C.J., dissents with an opinion, in which SHAW, J., concurs.
*574 BOYD, Chief Justice, dissenting.
I dissent and would approve the decision of the district court of appeal. That court held that in a case where no right of jury trial exists for benefit of the defendant, a trial court's finding of obscenity in the absence of any testimony defining "contemporary community standards" is not supported by legally sufficient evidence. The concept of due process of law teaches us that to allow a lone judicial officer to make such a finding based only on subjective judgment is a dangerous precedent, however correct or well-exercised that judgment may have been in this particular case. Where freedom of the press is subject to being affected, legal procedures should be restrictively tailored to achieve the government's purpose without infringing upon the protected liberty. I also agree with Judge Jorgenson that to allow jury trials in such cases would obviate the problem of evidence of contemporary community standards.
SHAW, J., concurs.